JACOBS BROTHERS & CO., Appellants, v. ABRAM ERVIN, ASSIGNEE, AND McCALLEY & ANDREWS, Respondents.

INSOLVENCY—ASSIGNMENT—ENFORCEMENT OF CREDITOR'S RIGHTS.

An assignee for the benefit of creditors, under the act of October 18, 1878, does not occupy the position of a purchaser in good faith, but he is, under said act, the trustee of the creditors, as to the property conveyed to him by the assignment, and so far represents them that it is his duty to oppose any attempt by a creditor who claims a lien on any of such property, which is void as to other creditors, to enforce the same. Such power is essential to the effectual performance of his trust.

CHATTEL MORTGAGE—NO LIEN WHEN FRAUDULENT.

Where, upon the execution of a chattel mortgage on a portion of a stock of goods in the store of a retail merchant, there is a verbal agreement between the parties that the mortgaged goods shall remain in the mortgagor's possession, and form part of his stock in trade, and that he shall have full power to sell and dispose of the same in the usual course of his business, and the mortgagor did retain possession and hold the goods for sale in accordance with such agreement: *Held*, that the chattel mortgage was fraudulent and void as to the other creditors of the mortgagor, and created no lien on the goods. Following the case of *Orton* v. *Orton*, 7 Oregon, 478.

APPEAL from Linn County. The facts are stated in the opinion.

*R. S. Strahan and L. Flinn,* for appellants.

Contend that a mortgagor's possession of the mortgaged goods, with the power of selling them in the usual course of business, does not make the transaction fraudulent *per se;* that fraud in such cases is a question of fact which must be proven. If fraud is alleged to exist in a sale or mortgage, it must be proved as a fact. (Leonard A. Jones on Fraudulent Mortgages, page 30, and references given.)

Statutes providing for the recording of chattel mortgages are a substitute for and equivalent to the possession of the mortgagee. (*Forbes* v. *Parker,* 16 Pick., 464; *Bullock* v. *Williams,* 16 Pick., 33; *Hughes* v. *Covey,* 20 Iowa, 399.)

Our code, section 54, page 523, declares that the question of fraudulent intent shall be deemed, in all cases, a question of fact and not of law.

*Powell & Bilyeu, and Humphrey & Wolverton,* for respondents.

The authorities are numerous in support of the doctrine that a chattel mortgage is void as to creditors and purchasers for value, if the instrument or the evidence shows that the mortgagor was to retain possession of the mortgaged goods, and dispose of them as his own. This doctrine has been settled by this court in the case of *Orton* v. *Orton,* 7 Or., 478.

The assignee may attack the validity of a judgment confessed by the assignor, and contest, for the benefit of creditors, the claim of a mortgagee, under a defective mortgage. (Burrell on Assignments, section 393; *Nichols* v. *Kribs,* 10 Wis., 76.)

In support of the doctrine that a chattel mortgage is void, when the right is given the mortgagor to retain possession of the goods mortgaged, and sell them as his own, we cite 17 Wend., 492; 18 Ill., 403; 58 N. H., 155; 1 Sawyer, 7; 11 Wall., 392; 5 Ohio, 1.

By the Court, WATSON, J.:

This suit was brought in the circuit court for Linn county, to foreclose a chattel mortgage executed by McCalley & Andrews, in favor of the appellants, on March 7, 1879.

The mortgage was duly filed and registered in the office of the county clerk of Linn county, in which county the mortgaged goods were situated, on March 10, 1879.

On March 13, 1879, McCalley & Andrews being insolvent, made an assignment of all their property, including that covered by said mortgage, for the benefit of all their creditors, to Abram Ervin, and delivered said property into his possession, under said assignment, and in accordance with the provisions of the general assignment law of the state, approved Oct. 18, 1878.

The deed of the assignment was duly recorded the same day, in the office of the county clerk of Linn county, and thereafter the assignee took every step necessary to carry the assignment into effect.

McCalley & Andrews, at this time, were residing and doing business as retail merchants in Linn county, Oregon. This suit was commenced March 28, 1879, against all of the defendants.

The complaint alleges, in addition to the due execution and registration of the chattel mortgage to secure the payment of a *bona fide* debt, the subsequent assignment and delivery of the property to Ervin, as assignee, by McCalley & Andrews, and that Ervin, as such assignee, holds possession of such mortgaged property, and refuses to give up or surrender the same to plaintiffs.

Defendants demurred to the complaint. The demurrer was sustained, but, on appeal, this court reversed the decision of the court below, and remanded the case for further proceedings.

McCalley & Andrews made no further defense, but Ervin filed his separate answer to the complaint, denying that he

ever refused, prior to the commencement of this suit, to give up or surrender the mortgaged goods to the plaintiffs, and as a separate defense, alleged that said chattel mortgage was fraudulent and void as to the creditors of McCalley & Andrews, and created no lien as to them on said mortgaged goods, for the reason that it was given to hinder, delay and defraud such creditors, of whom there was a great number, both at the time said chattel mortgage was executed, and at the date of said assignment, and that it was understood and agreed between plaintiffs and McCalley & Andrews, before and at the time said chattel mortgage was executed, that the mortgaged goods should continue to remain in the possession of McCalley & Andrews, and be sold and disposed of by them in the ordinary course of their business, in connection with their other goods, and should form part of their stock in trade, and that under this agreement McCalley & Andrews did remain in possession of said mortgaged goods, and did continue to sell and dispose of the same in connection with their other goods, in the ordinary course of their business, from the execution of said chattel mortgage up to the date of said assignment to him, on March 13, 1879.

Upon these facts Ervin claimed a right, as such assignee, to sell and dispose of such mortgaged goods, as well as all other goods contained in said assignment, for the benefit of all the creditors of McCalley & Andrews.

Plaintiffs filed a general demurrer to this separate defense in Ervin's answer, which was overruled, and they then replied, denying all the new matter set up in such defense.

The evidence was taken and a trial had, when the court below, on March 13, 1880, rendered a decision declaring said chattel mortgage fraudulent and void as to the creditors of McCalley & Andrews, and dismissing the complaint at the cost of plaintiffs. From this decree plaintiffs have brought this appeal.

Upon the previous appeal of the case, it was held by this court that "where in a mortgage there is a manner provided

for foreclosing the same, either party may insist on having the mortgage foreclosed in the manner so provided, but the party so insisting must fulfill each provision or stipulation on his part, and if the mortgagor insists on them ortgagee foreclosing the mortgage in the manner provided, such mortgagor must deliver the mortgaged goods to the mortgagee to enable him to sell the same." (8 Oregon, 124.)

It is contended by respondent's counsel that this decision was incorrect, and a different ruling on the point is claimed. But even if the court could consider the question still open, as to whether appellants became entitled to foreclose their mortgage in any other manner than that stipulated in the mortgage itself, by the refusal of the mortgagors to deliver the possession of the mortgaged goods, it may be passed without expressing any opinion; for, if the mortgage is void as to creditors, and can be assailed by the assignee in this suit, the result must be fatal to the appellants, though that question be decided in their favor.

This brings us to the consideration of plaintiffs' demurrer to Ervin's separate defense, which was overruled by the court below, but which appellants insist on here as they have the right to do.

It is claimed by appellants on this demurrer, that Ervin, as assignee, is not a purchaser in good faith. This position we consider to be correct, whether he represents the assignor or the creditors of the assignor, existing at the date of the mortgage, or both together; he must take the property subject to any equity that could be sustained against both, or either of them, if no assignment had been made. The authorities supporting this proposition are numerous. We shall cite only a few. (*Clark* v. *Flint*, 22 Pick., 243; *Griffin* v. *Marquardt*, 17 N. Y., 29; *Vanheusen and Charles* v. *Radcliff*, Id., 584; *Yeatman* v. *Savings Institution*, 95 U. S., 766; Story's Eq. Jur., 1,228, 1,229.)

The principle maintained by these authorities is, that neither the assignee nor his beneficiaries part with any right,

and are, in no manner, prejudiced by taking the assignment subject to such equities as exist against the property in the hands of the assignor.

Another question arises on the demurrer which is more difficult to solve.    It is in regard to the powers of the assignee under our statute, in cases where his assignor, previous to the assignment, had made transfers of, or created incumbrances upon his property, which the law holds valid as to him, but fraudulent and void as to creditors.    The decisions upon this point, which are accessible to us, are not numerous, but we think they establish the doctrine that at common law a voluntary assignment confers upon the assignee no power to impeach or set aside previous transfers or conveyances of property by his assignor which had been completely executed, and had vested the title in the property in the fraudulent vendee, and were valid as to the assignor, but fraudulent and void as to his creditors.

In such cases the assignor being completely cut off from the title to the property, and having no further interest in it, or power over it, his voluntary assignment could not affect it in any manner whatever.    It could not be deemed any part of his estate upon which a voluntary assignment could operate, but the right of the general creditor, in equity, attached to the property, and followed it into the hands of the fraudulent vendee, and gave him, and him alone, the power to impeach and set aside the fraudulent transfer or conveyance. This right of the creditor could not pass by the assignment. (Burrell on Assignments, 358; *Browning* v. *Curtis*, 10 Paige, 210; *Browning* v. *White*, 6 Barbour S. C. R., 91; *Leach* v. *Kelsey*, 7 Id., 466.)

But where a mere lien or incumbrance, fraudulent and void as to creditors, but valid as between the parties, has been created by the assignor, upon property remaining in his possession, and the title to which passes to and vests in the assignee for the benefit of creditors, under a voluntary assignment, a

different case is presented, and upon which it is extremely difficult to reach a perfectly satisfactory conclusion.

We have not been cited to, nor have we been able to find, a single decision denying to the assignee, under a voluntary assignment, even at common law, the right to ·resist the enforcement of a mortgage or other lien, valid as to assignor but void as to creditors, against the trust property in his hands for the benefit of creditors under such assignment. On the other hand it has been held by the Supreme Court of Wisconsin, and also. by the Court of Appeals of Maryland, without reference to any statute, and evidently upon recognized principles of the common law, that an assignee for the benefit of creditors, under a voluntary conveyance, did possess this right. (*Nichols* v. *Kribs*, 10 Wis., 76; *Building Association* v. *Wilson, et al.*, 41 Md., 506.)

And in Indiana, under a statute which, so far as the question under consideration is concerned, may justly be deemed as identical with our own, the same doctrine has been held by the supreme court. (*Lord, et al.*, v. *Fisher*, 19 Ind., 7; *Lockwood* v. *Slevin, et al.*, 26 Id., 124.)

Our statute, making provisions on this subject, passed in October, 1878, does not expressly confer this power on the assignee. (Session Laws of 1878, page 36.)

Its object, so aptly expressed in its title, was: "To secure to creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors." To this end it declares that no such assignment shall be valid unless made for the benefit of all the creditors, in proportion to the amount of their respective claims; that attachments levied on the assignor's property, but not ripened into judgment, at the date of the assignment, shall be discharged, and the attachment creditors be compelled to accept a *pro rata* distribution of the proceeds of the debtor's estate, from his assignee, and that the creditors shall be conclusively presumed to consent to the assignment. Security is required of the assignee, and

a complete mode of proceeding marked out. Its whole design clearly shows that it was the intention of its framers to provide a simple and effectual mode of making an equitable distribution of the insolvent debtor's estate among all his creditors, and such a construction should be given it, if consistent with established legal principles, as will make it effectual for that purpose.

The right of the general creditors to impeach or resist a fraudulent transfer or incumbrance attaches to the property, and we can conceive no inconsistency in holding that that right vests in the assignee under the assignment which they have assented to. He is the trustee of the creditors, as well as of the debtor, and holds the property assigned to him in trust for the payment of their claims against the debtor. With their consent he has taken the title and possession of the property, and represents the interest which they have in it, and it would be a narrow construction, indeed, that would deny that he represents their whole interest; especially would this be the case where it so plainly appears, as it does in such cases as the present, that such a power is necessary, in a vital degree, to enable him to effectually administer his trust.

Another consideration for holding in favor of the power of the assignee, in such cases, is the change which the statute has effected in the creditor's remedy. His right to proceed, by attachment, is virtually taken from him, and his means of successfully contesting fraudulent liens and incumbrances thereby greatly diminished, while the difficulties in the way are multiplied; and yet the enforcement of such incumbrances would result in preferences far more inequitable than those which it was the manifest purpose of the statute to strike down.

Upon these views of the nature of the trust created in him, not by the voluntary assignment of the debtor alone, but by the consent of the creditors also, under our statute, and upon the authorities cited, we feel justified in holding that the assignee possesses the power contended for.

The only remaining question arising on the demurrer is, whether the agreement set up in Ervin's separate defense would render the mortgage of plaintiffs fraudulent and void as to the general creditors of McCalley & Andrews.

The same question, substantially, was decided by this court in the case of *Orton* v. *Orton*, 7 Oregon, 478. We have no disposition to question the authority of this case, as we understand the doctrine it lays down. The reasons upon which it is based seem to us to be sound, and the authorities cited in its support are both able and well considered. We have no hesitancy in affirming it here as a sound and authoritative exposition of the law upon the subject in this state. The demurrer must be overruled.

It only remains to determine, as a question of fact, upon the evidence in this case, whether there was any such agreement entered into between plaintiffs and McCalley & Andrews, as is alleged in Ervin's answer.

The stipulations in the mortgage itself that the mortgagors may remain in possession of the goods, and in the free use and enjoyment of the same, subject to the mortgagees' right to take possession thereof, and sell upon default in payment, or other breach of conditions, do not establish such an agreement, in themselves, as would render the mortgage fraudulent and void as to creditors, under the rule adopted by the court. (*Cleaves* v. *Herbert*, 61 Ill., 126.)

It is the retention of possession, with power to sell generally, in the course of trade, by agreement with the mortgagee, that is objectionable, and no such power is necessarily implied from such stipulations. It must depend on the evidence outside of the mortgage itself, and in addition to anything it contains, whether such an agreement has been established. Its stipulations must, however, be considered in connection with the parol evidence on the question whether such an agreement as is alleged was made or not.

The mortgage provides that the mortgagors shall retain possession and have the full use and enjoyment of the mort-

gaged property, subject, however, to the right of plaintiffs to take possession and sell it at any time after the conditions should be broken. Robert McCalley and David Andrews both testify, positively, that the understanding and agreement between them and Henry Ach, plaintiffs' agent, when they gave the chattel mortgage, was, that they should be allowed to go on with their business the same as before, and sell the goods mortgaged just the same as before until after harvest, and they were to sell these goods just as other goods in the store, without distinction, in the usual course of their business.

Henry Ach testifies that there was no such understanding or agreement to his recollection, and that he had no authority from plaintiffs beyond collecting or securing the account for which the note secured by the chattel mortgage in controversy was given.

But the negative character of Mr. Ach's testimony must, upon well settled principles of evidence, effectually prevent it from being considered of equal weight with the positive testimony of both McCalley & Andrews, or either of them. Their testimony, taken in connection with the stipulations in the mortgage, after giving to the testimony of Mr. Ach all the weight that can be fairly claimed for it, satisfies us that there was an understanding and agreement between them at the time the mortgage was given, such as is pleaded in Ervin's answer; and this conclusion is supported by a decided preponderance of the evidence.

In consequence of this conclusion, and under the authorities above cited as having our approval, we are compelled to hold this mortgage fraudulent and void as to the creditors of McCalley & Andrews, and their assignee for the benefit of their creditors. We find no error in the decree of the court below, and it must be affirmed with costs.

Decree affirmed.