# BREMER & CO. *v.* FLECKENSTEIN & MAYER.

### CHATTEL MORTGAGE—SALE—CONFIRMATION—CREDITOR'S RIGHTS.

Fraudulent mortgages, judgments and decrees, although void at law, may be impeached and set aside in equity, where they tend to obstruct the collection of debts; and having acquired jurisdiction for this purpose, equity will proceed to afford final relief.

Where a fraudulent mortgagee, for the purpose of defeating a subsequent valid attachment, procures a decree of foreclosure, and receives the proceeds of the mortgaged property through a judicial sale under such decree, equity will make him a trustee of such proceeds for the attaching creditor.

A chattel mortgage fraudulent as to creditors, by reason of an agreement between the parties thereto, allowing the mortgagor to continue in possession of the mortgaged chattels, with power to sell and dispose of portions of the same for his own benefit, in the usual course of trade, is void as to all the property covered by the power of sale.

No order of sale is necessary to preserve an attaching creditor's lien on the proceeds of attached property in the hands of a fraudulent mortgagee, who has procured a foreclosure of his mortgage and a sale of the property, with notice of the attachment, but without making the creditor a party prior to the rendition of judgment in the attachment suit.

An appellee, whose objections to the confirmation of a referee's report in the court below were overruled, is entitled to have such action of the lower court reviewed, on an appeal by the appellant from the whole decree, and to obtain a more favorable decree, if warranted by the facts in the case.

It is error to allow interest in excess of the legal rate as damages.

APPEAL from Multnomah.

This is an appeal from a decree of the circuit court, declaring a chattel mortgage fraudulent and void as to the respondents, J. Bremer & Co., setting aside a decree of foreclosure thereof in the same court, and giving respondents judgment against the appellants for $200, with interest at one per cent. per month from July 7, 1879, and costs.

The mortgage was executed by one J. Haas, to appellants Fleckenstein & Mayer, on June 2, 1879, upon a stock of wines, liquors and cigars, some bar-room furniture, and other personal property, to secure a debt of $4,000, which he then owed

appellants.  The mortgage was duly filed and recorded on the 6th day of the same month.  Haas was a wholesale and retail liquor merchant, doing business in the city of Portland, and the wines, liquors and cigars constituted his stock in trade. He remained in possession, and continued to sell at retail, both for cash and on credit, until the 7th day of July following, when all the mortgaged property was attached, in an action brought against him by the respondents, in said circuit court, to recover a debt of $289, then due from him to the respondents.  On the day following, appellants instituted a suit in the same court to foreclose their mortgage, without making respondents parties, and, by the appearance and consent of Haas, obtained a decree of foreclosure and sale on that day.  The property was sold under this decree, on the 21st day of the same month, for $1,240, and the proceeds were afterwards paid over to the appellants.  Three days later respondents recovered judgment in their action against Haas, for the sum of $289, with interest at one per cent. per month from June 26, 1879, and costs and disbursements, taxed at $24.20.  On the 7th day of August following, and while the proceeds of sale were still in the hands of the clerk of the court, they filed an affidavit with said clerk, claiming a sufficient amount of such proceeds to satisfy their judgment against Haas.

The clerk thereupon applied to the court for an order requiring respondents and appellants to interplead in said foreclosure suit as to the disposition of such proceeds.  Upon this application the court made an order allowing respondents ten days from that date in which to file a bill in equity, for the purpose of impeaching the decree in said foreclosure suit, and restraining the clerk from paying over such proceeds.  On the 21st day of the same month, the respondents having neglected to file a bill, the court vacated its order, and the clerk paid over the proceeds of sale to the appellants.  Haas was all the while insolvent.

The respondents then brought this suit to impeach and set

aside the mortgage and for a decree of foreclosure thereon, on the ground of fraud, and prayed for a personal judgment against the appellants for the amount of their judgment against Haas. Appellants demurred to the complaint, but the demurrer was overruled.

They then answered, denying all allegations of fraud, and averring as separate defenses, that respondents' judgment against Haas was a general judgment only, and contained no order for the sale of the property attached, and that in consequence thereof their attachment became vacated and discharged, and their lien was lost, also setting up, as a bar to the suit, the filing of the affidavit with the clerk, and the proceedings thereon, above stated. The respondents demurred to these defenses and the demurrer was sustained by the court.

A replication was filed to the remaining new matter set forth in the answer. The cause was then submitted to a referee to take the testimony and report his findings of fact, and conclusions of law therefrom. He found: "That it was understood between defendants Fleckenstein and Mayer at the time of the execution of said mortgage that Haas should continue in his business of retail liquor dealer, in Portland, Oregon, and sell, in the course of business, wines, liquors and cigars, and stock, that was included in the mortgage, and replace the same. The proceeds of such sales to be used in the business by Haas, and the remainder paid to the defendants Fleckenstein and Mayer on the mortgage. That Haas so continued and sold, from the execution of the mortgage until plaintiffs' levy, both for cash and upon credit. Fleckenstein and Mayer at the time knew that such sales were being made by Haas."

He also found that the value of the stock of wines, liquors and cigars, at the time of respondents' attachment, was $200, and the balance of the property, $1,040. As a conclusion of law, he reported the respondents entitled to a decree setting

aside said proceedings of foreclosure, and for the recovery of $200 and costs.

Objections were filed by both parties, but they were overruled, the report confirmed and a decree entered accordingly.

*Joseph Simon*, for appellants.

The mortgage gave no authority to the mortgagor to sell any portion of the property, except for the purpose of applying the proceeds to diminish his debt to the mortgagee. That such a chattel mortgage is valid, and will be sustained by the courts, there can be no doubt. (*Robinson* v. *Elliott*, 22 Wallace, 513; *Brett* v. *Carter*, 2 Lowell, 458; *Hughes* v. *Corey*, 20 Iowa, 397; *Re Kirkbride*, 5 Dillon, 116; *Davenport* v. *Foulke*, 68 Ind., 382; 22 Kan., 127; 31 Am. R., 171; 32 Am. R., 621.)

*Henry Ach*, for respondents.

Deeming that it is proven that an agreement was had and understood between the appellants and Haas, as charged in the complaint, we submit that the mortgage is void as to the respondent. (Herman on Chattel Mortgages, pages 225, 228, 230, 232, 238, 240, 257, 352, 389; *Collins* v. *Meyers*, 16 Ohio, 547; *Edgell* v. *Hart*, 9 N. Y., 213; *Russell* v. *Winne*, 37 N. Y., 591; *Orton* v. *Orton*, 7 Or., 478; *Jacobs* v. *McCalley*, 9 Or., 52.)

By the Court, Watson, J.:

The first question to be considered arises upon the decision of the court below overruling appellants' demurrer to the complaint. In addition to the facts contained in the foregoing statement, the complaint alleged an agreement and understanding between Haas and the appellants, at the time the chattel mortgage was executed, substantially as found by the referee. But appellants insist that in the case made by the complaint itself, the respondents had a plain, speedy and adequate remedy at law, and were therefore not entitled to bring a suit in equity. We think it unnecessary to determine

whether they had an adequate legal remedy at law or not, as they had a clear right to resort to a suit in equity under the allegations of fraud in their complaint, and on account of the nature of the relief sought. If the allegations in the complaint were true, and their truth was admitted by the demurrer, the chattel mortgage given by Haas to the appellants was fraudulent and void as to their judgment against Haas, as also were the proceedings upon the foreclosure of the same, and they had a right, for that reason, to impeach and set aside both the mortgage and the decree thereon.

They acquired a specific lien on the property by the levy under their attachment, and could have maintained a suit in equity to have the fraudulent mortgage declared void as to their judgment, even though there had been no foreclosure or sale under it. And they would not have been under any necessity of first exhausting their legal remedy by an execution sale of the attached property, before proceeding in equity to impeach and remove the fraudulent incumbrance.

Equity will always lend its aid to remove fraudulent obstructions out of the way of legal process, and when it acquires jurisdiction for this purpose, will retain it until final and complete satisfaction has been obtained. And it is in equity only, that fraudulent liens on titles, which obstruct legal process, and render any proceeding under it hazardous and uncertain, can be removed, and the full benefit of the debtor's effects realized in satisfaction of valid demands against him.

The fact of there having been a decree of foreclosure and sale under the fraudulent mortgage, will not alter the relations of the parties as to each other. Circuitous methods may, under some circumstances, prove effectual to conceal fraud from detection, but cannot protect it after discovery.

The appellants having obtained the proceeds of the attached property, with notice of the rights of the respondents, by selling it out from under the attachment, through the instrumentality of a mortgage lien and decree of foreclosure, fraudulent, and therefore invalid as to the respondents, as

averred in the complaint, are not shielded by the form of legal proceedings adopted by them to accomplish their purpose. In equity the lien of the respondents is just as available against the proceeds in their hands as it was at law under the attachment against the property itself.

It was suggested at the hearing that the respondents had an adequate remedy against the sheriff. But without conceding the correctness of this proposition—and it is distinctly opposed to our judgment—we think it immaterial in the determination of this case. We are fully satisfied that upon the facts stated in their complaint, they were entitled to bring this suit against the appellants, whether they did or did not have a remedy against the sheriff who held the attachment and made the sale.

We will next examine the objections urged by appellants to the decision of the lower court upon the demurrer of the respondents to the separate defenses set up in the answer. Under the law, as it stood, before the amendment of October 25, 1878, no order of sale of attached property was required. The Statute itself directed the application of such property upon the execution when it should be issued.

The amendment above referred to, however, provides that if property has been attached in the action, and has not been sold as perishable, or otherwise discharged from the attachment as provided by law, the court shall, when it renders judgment, order and adjudge that the property be sold to satisfy the plaintiffs' demands, and that if execution issues thereon, the sheriff shall apply the property attached by him, or the proceeds thereof, upon such execution.

We recognize the fact that this amendment has effected a change here as to the property under attachment, when judgment in the action is rendered. The order of sale must be made as to such property when judgment is given, or it will be discharged from the attachment, and liberated from the attachment lien. The authorities cited by appellants' counsel fully sustain this principle. (*Wassen* v. *Cone*, 86 Ill., 46;

*Staunton* v. *Harris*, 9 Heisk, (Tenn.,) 579; *Hillman* v. *Werner*, Id., 586.)

But no order of sale is required where the attached property has been sold as perishable, or discharged from the attachment as provided by law, prior to the rendition of judgment; and it seems to us that under such conditions, such an order would be unnecessary and unmeaning.    If the property has been sold or discharged from the attachment previous to the rendition of the judgment, there is nothing for the order of sale to operate on, and if there happen to be any proceeds in the sheriff's hands when the execution issues, the statute directs their application without any order of the court for that purpose.    In the case at bar, the attached property had all been sold and effectually discharged from the attachment, as provided by law, through the agency of the appellants, before respondents recovered their judgment against Haas, and we do not think the equitable rights of the latter against the former were in any manner affected by the form of the judgment against Haas.    As to the defense based upon the proceedings had on the affidavit filed by respondents with the clerk, little need be said.    It was not in any sense a judicial proceeding, in which the rights of the parties to this suit could have been determined as against each other, and, in fact, the court did not undertake to determine any such rights. And it seems very clear that those proceedings can not by any possibility affect the determination in this suit.    In our judgment neither of these defenses was sufficient, and the demurrer was properly sustained.

This brings us to the questions of fact.    The mortgage does not, on its face, express any agreement with Haas that would render it fraudulent and invalid as to the respondents. But it has long been settled beyond the possibility of successful contradiction, that courts are not confined to a bare inspection of written instruments, when it is sought to impeach their execution on account of fraud.    And in the class to which the case under consideration belongs, proof of a contempo-

raneous parol agreement as effectually invalidates the mortgage as an agreement incorporated into the mortgage itself. It is too late now to discuss the effect of such an agreement as was alleged in the complaint, and found by the referee, in this state.

We regard it as settled doctrine here, that an agreement of that character between the mortgagor and mortgagee, at the time the mortgage is given, renders the mortgage fraudulent and void as to other creditors of the mortgagor. (*Orton* v. *Orton*, 7 Or., 478; *Jacobs* v. *McCalley*, 9 Or., 52.)

As to the existence of such an agreement between the appellants and Haas, we think there is not much room to doubt that Haas was allowed to continue in possession of the mortgaged property, and keep his place of business open as usual, from the date of the execution of the chattel mortgage on June 2, 1879, until it was attached by respondents on July 7, 1879, with the full knowledge and consent of the appellants, is not denied. That the mortgage covered all his stock in trade, and that he continued to sell it off at retail during said period, with the knowledge and consent of the appellants, is not disputed. That he sold on credit as well as for cash, during this period, fully appears from the testimony. That he replenished his stock from time to time during this period, with the proceeds of such sales, and even patronized the appellants while so doing, is clearly proven.

Haas testifies that Mayer, one of the appellants, told him not to sell at wholesale, but at retail only, at the time the mortgage was executed. Mayer himself was a witness, and did not dispute this. On the contrary, he seems to concede that Haas was to sell at retail, but claims he was only to sell for cash, and not to sell at wholesale. His testimony also fairly justifies the inference that Haas was to use such portion of the proceeds of sales made after the execution of the mortgage as might be necessary to meet his own personal expenses incurred in conducting the business, and keep his stock replenished. And this was just what he evidently did with the

amounts received by him on account of sales of the mortgaged stock.

Here, then, we find Haas, after the execution of the mortgage to appellants, carrying on his business in the same manner as before; selling off the mortgaged stock in trade, and paying his own expenses, and keeping up his stock by fresh purchases out of the proceeds of such sales, rendering no account to the holders of the mortgage, and in reality under no more restraint than if it had not been in existence. And yet its obvious effect was to ward off his other creditors, and hinder and delay the collection of their demands against him, and the appellants must be presumed to have so intended. We have no hesitation in declaring that such an arrangement was a fraud upon the other creditors, and cannot be upheld.

We shall not discuss the testimony so far as it relates to the separate value of the stock of wines, liquors and cigars, as we are satisfied of the correctness of the findings of the court below on this point.

The decree of the lower court is erroneous in respect to the rate of interest allowed. Legal interest, not exceeding ten per cent. per annum, was all that could properly have been allowed.

The decree must be modified in accordance with these views.