Argued May 7, decided June 10, rehearing denied July 15, 1913.

## GREIG *v.* MUELLER.

### (133 Pac. 94.)

**Chattel Mortgages—Consideration—Pre-existing Debt.**

1. A pre-existing debt is a sufficient consideration for a chattel mortgage given to secure it.

> [The question of a precedent debt as consideration for a chattel mortgage is discussed in the note in Ann. Cas. 1912C, 79.]

**Chattel Mortgages—Fraud as to Creditors.**

2. Where an automobile dealer offered to give a chattel mortgage covering all his stock in trade, as well as other property, to a bank to which he was indebted, to enable him to effect a settlement with another creditor, and the bank accepted the mortgage with knowledge of its purpose, and thereafter permitted him to sell the stock covered by the mortgage in regular course of business without accounting to the bank as required by the mortgage, the mortgage was void as a fraud upon creditors.

From Malheur: DALTON BIGGS, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action by E. M. Greig, as trustee in bankruptcy of the estate of Howard N. Ford, a bankrupt, against C. C. Mueller, as trustee for the First National Bank of Vale, Vale, Oregon, and the First National Bank of Ontario, Ontario, Oregon, and the First National Bank of Vale, Oregon, and The First National Bank of Ontario, Oregon.

The facts are as follows:

Howard H. Ford, a dealer in autos, auto goods, and sundries, in connection with his auto repair shop, being in failing circumstances, was adjudged a bankrupt. The plaintiff was appointed assignee of his estate, and as such brought this suit to have canceled a certain chattel mortgage given by Ford to Mueller for the benefit of the defendants, the First National Bank of Vale, hereinafter referred to as the Vale bank, and the First National Bank of Ontario, hereinafter referred to as the Ontario bank. The mortgage was

given on May 11, 1911, at which time Ford was indebted to the Vale bank in the sum of $6,700 as evidenced by certain promissory notes and overdrafts, and to the Ontario bank in the sum of $3,500. New notes were executed by Ford to Mueller for said amounts secured by the said mortgage. The mortgage covered "three 40 horse-power Oakland automobiles; one 30 horse-power Oakland touring car; one 30 horse-power Oakland roadster; one 40x45 horse-power Pierce Arrow touring car; one lathe, one drill press, one electric motor, two gasoline tanks, of about 300 and 500-gallon capacity, respectively; all tools, fixtures, appliances, and all stock in trade, goods, wares, and merchandise, and sundries * * including all furniture and furnishings, office safe * * all of the foregoing mentioned and described property now being in that certain brick building on the east side of the Main street in Ontario * * occupied by the party of the first part under the name and style of Ontario Auto Company. * * "

It is provided in the mortgage that, "and these presents are on the express condition that if the party of the first part, his executors, administrators, and assigns, shall well and truly account on the third Saturday of each and every month hereafter during the life of these presents unto the said party of the second part * * for all of the receipts of said business and pay over the net profits thereof after the running expenses thereof shall have been paid, as may be approved by the party of the second part, and the replacement of said stock shall have been provided for in the pleasure of the said party of the second part * * then these presents shall be void."

At the time of the execution of the mortgage Ford was largely indebted to the Oakland Motor Car Company, of Detroit, Michigan. It appears that one purpose of Ford in making the mortgage was to put

himself in a position that he might force a satisfactory compromise or settlement with the Oakland Motor Car Company as well as to secure the mortgagees. Ford made two informal reports under the mortgage to Mueller, which were indefinite and incomplete, but did not pay over any of the proceeds of the business, and continued to sell the goods at retail in the usual way, keeping no specific account of his transactions. He paid his personal expenses as well as the expenses of the business out of the receipts, and kept no account thereof.

The Ontario bank was made a defendant, but disclaims any interest in said mortgage. The Vale bank answered, setting up the notes of Ford to Mueller in the sum of $6,700 as given for its benefit for a preexisting debt, and that they with the mortgage were taken in Mueller's name for the benefit of the said Vale bank. Upon the trial the court found that the mortgage was a valid, subsisting lien in defendant's favor, enumerating the items of goods covered by the mortgage as consisting of more than 400 items, and adjudged that plaintiff is not entitled to any relief. Plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellants there was a brief over the names of *Messrs. McCulloch & Eckhardt* and *Mr. H. C. East-ham,* with an oral argument by *Mr. John W. McCulloch.*

For respondents there was a brief and an oral argument by *Mr. C. M. Crandall.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. It is first contended that defendant parted with no consideration for the mortgage at the time of its

execution. That contention may be briefly answered by the statement that a pre-existing debt secured by mortgage is a sufficient consideration for it: *Currie* v. *Bowman,* 25 Or. 364 (35 Pac. 848); *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac. 999); *Mendenhall* v. *Elwert,* 36 Or. 375 (52 Pac. 22, 59 Pac. 805); *Hesse* v. *Barrett,* 41 Or. 202 (68 Pac. 751).

2. It is next claimed that Ford made the mortgage for the purpose of hindering and delaying creditors. According to Ford's own statement he feared trouble with the Oakland Motor Car Company, which held a claim against him for about $8,000; and for the purpose of getting a settlement with it he proposed to the Vale bank and to the Ontario bank that, in order to protect them, he would give them a chattel mortgage. He says that neither the Vale bank nor the Ontario bank requested the mortgage. The Ontario bank did not agree to accept it, but said they were satisfied with the paper they had; that Monroe, the cashier of the Vale bank, said, "He was willing to (accept it) if it was any benefit to me"—thus showing a fraudulent purpose on the part of Ford, which was acquiesced in by the Vale bank. Monroe admits knowledge of Ford's purpose and acquiesced in the mortgage, and although the mortgage contains no reservation in favor of Ford, and is in form valid, it is clear that the Vale bank nominally accepted the mortgage to benefit Ford, and thereafter with a tacit understanding permitted him to continue the business unrestrained and for his own benefit. It is said in *Sabin* v. *Columbia Fuel Co.,* 25 Or. 15 (34 Pac. 692, 42 Am. St. Rep. 756): "Where a mortgage is designed and made for the benefit of the mortgagor, and to enable him to continue in business by placing his property beyond the reach of legal process, it is void as to creditors." Where the mortgage on its face con-

tains no evidence of being made for the benefit of the debtor, yet, as said in *Sabin* v. *Wilkins,* 31 Or. 450 (48 Pac. 425, 37 L. R. A. 465, note): ''As it is a thing capable of modification by subsequent agreement, either expressed or implied by co-operative and willful disregard of its terms and conditions, it is a prerequisite to its continuing validity that good faith and fair dealing be maintained toward those whose interests may be affected by it.'' If the parties by their subsequent treatment of it and of the property covered by it converted it into an instrument calculated to delay or defraud creditors, it will be thus rendered fraudulent and void from that time. In *Orton* v. *Orton,* 7 Or. 478 (33 Am. Rep. 717), it is held that where by the provisions of the mortgage, or by an agreement between the mortgagor and the mortgagee, the mortgagor is to remain in possession of the property and may sell the mortgaged property for the benefit of the mortgagor, the mortgage is void as to purchasers and attaching creditors. And in *Bremer* v. *Fleckenstein,* 9 Or. 266, where there was a parol agreement between the mortgagor and mortgagee that the former might sell the goods at retail and use the proceeds for his own expenses, expense of the business, and to replenish the stock, it is said that such an agreement renders a mortgage void as to other creditors of the mortgagor. This court has recognized that by agreement or provision in the mortgage the mortgagor may remain in possession of the stock of goods and continue to make sales, strictly accounting to the mortgagee for the proceeds of the sales less the expense of making the sales; but by agreement and connivance in disregard of the terms of the mortgage Ford was permitted to use it to ward off his creditors, and yet to proceed to use the goods exclusively for his own benefit without paying the

mortgage debt therefrom. Thus with the acquiescence of the mortgagee the mortgage became an instrument to hinder and delay creditors, in violation of the terms of the statute. To maintain his preference the mortgagee under such a mortgage must be diligent to require observance of its terms and spirit. This duty is well stated in *Sabin* v. *Wilkins,* 31 Or. 450 (48 Pac. 425, 37 L. R. A. 465), and in *Currie* v. *Bowman,* 25 Or. 364 (35 Pac. 848). The Vale bank knew Ford was selling at retail and for credit as well as for cash, keeping no account of such sale nor of the receipts therefrom, although by the mortgage both the expense of making the sales and the purchase of new stock were to be made only on approval of the mortgagee. As beneficiary of the mortgage the Vale bank did not require nor receive any monthly account provided for, or payment to it of the receipts from sales, neither did it control the expenditure of the receipts. In fact, it acquiesced in Ford's methods of conducting the business as he pleased, in total disregard of the mortgage or of its requirements and without even keeping an account of his doings.

We conclude that the mortgage was executed by Ford for a fraudulent purpose; that the Vale bank accepted it with knowledge of that purpose and for Ford's benefit, and permitted him to conduct the business as he had formerly done and for his own benefit; and that as to other creditors the mortgage was void.

The decree is reversed and a decree will be rendered here adjudging the mortgage to be void.

REVERSED: DECREE RENDERED.