PETERSON v. SABIN.

In re ROHRBACHER AUTOMATIC AIR PUMP CO.

(Circuit Court of Appeals, Ninth Circuit. May 25, 1914.)

No. 2354.

BANKRUPTCY (§ 178*) — CHATTEL MORTGAGE — SALE OF PROPERTY BY MORT-
GAGOR—FRAUD.

Where a bankrupt in good faith and for a present consideration executed a chattel mortgage on all its property in its designated place of business, etc., the mortgage providing that the bankrupt should have the right to sell and dispose of a portion of the property without liability to account for the proceeds to the mortgagee, it was not thereby rendered invalid in toto as against the bankrupt's trustee, but only to the extent of the property which the bankrupt was so authorized to sell.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*]

Petition to Revise Order and Judgment of, and Appeal from, the District Court of the United States for the District of Oregon.

In the matter of bankruptcy proceedings of the Rohrbacher Automatic Air Pump Company. J. H. Peterson petitions to revise in matter of law an order and judgment in favor of R. L. Sabin, as trustee of the bankrupt's estate, holding invalid in toto a chattel mortgage executed by the bankrupt to said petitioner, who also files a transcript of record upon appeal. Reversed and remanded.

Wood, Montague & Hunt, C. E. S. Wood, P. P. Dabney, and M. M. Matthiessen, all of Portland, Or., for petitioner and appellant.

Sidney Teiser, of Portland, Or., for respondent and appellee.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

ROSS, Circuit Judge. The sole question for decision in this case is whether a chattel mortgage, given by the bankrupt corporation while a going concern, and duly executed and recorded, covering all the property of the mortgagor in its designated place of business in the city of Portland, consisting of machinery, tools, equipment, supplies, office furniture, and fittings, and safe, and the good will of the business, and "any and all patents owned by it [the mortgagor], and contracts and royalties, and its leasehold interest in said premises known as No. 173 East Water Street, Portland, Oregon," to secure certain money at the time borrowed of the mortgagee, the petitioner and appellant here, is void in toto because of the stipulated fact that the parties to the mortgage agreed, at the time of its execution, that the mortgagor "should continue to conduct its business of manufacturing and selling pumps at wholesale and retail, and that such pumps should be made out of materials then on hand and that the proceeds of such sales, together with the proceeds of the sale of such pumps as were on hand at the time the mortgage was executed should be used by the mortgagor as it saw fit," the stipulation further setting forth that the power of sale thus reserved was not intended to and did not extend to the machinery, tools, equipment, office furniture, and fittings, and safe covered by the mortgage, and further setting forth that the assets of the mortgagor at the time of the execution of the mortgage consisted, not only of such machinery, tools, equipment, office furniture, and fittings, and safe, but also "of numerous pumps already manufactured, and also considerable supplies and materials, a large portion of which were subsequently made into pumps, and which, together with the pumps on hand at the time of the execution of the mortgage, were sold without objection, and with the implied consent of the mortgagee." It was further stipulated between the parties "that the actual intention with which the mortgage was given was not fraudulent, but by this stipulation it is not intended either to admit or deny that there was not an implied fraudulent intent," and, further, that the said "J. H. Peterson at the time of advancing said $3,000, and of accepting said mortgage as security for its repayment, had no actual knowledge that said Rohrbacher Automatic Air Pump Company had any creditors other than those whose claims were to be satisfied by said loan," which money, the stipulation states, was borrowed "to be applied upon its debts." Unless it be that the Oregon law is otherwise, we think the mortgage in question should be held void only in so far as concerns that portion of the mortgaged property that the respective parties agreed the mortgagor should have the right to sell and dispose of without accounting for the proceeds thereof to the mortgagee.

The Supreme Court, in the case of Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171, having under consideration a chattel mortgage executed in the state of Iowa, thus concluded its opinion:

"The matter is not one of purely general commercial law. While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the

transfer of property are primarily, at least, a matter of state regulation. We are aware that there is great diversity in the rulings on this question by the courts of the several states; but whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein. Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223 [10 Sup. Ct. 1013, 34 L. Ed. 341]. Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith; and it is at least worthy of thought whether the rulings made by the Supreme Court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes, without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments, and that, like the recording of a real estate mortgage, gives notice to all parties interested of the fact and extent of incumbrances. Why should a transaction like this be condemned, if made in good faith and to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor, in payment of a debt. If an absolute, why not a conditional, sale, with such conditions as he and his creditor may agree upon? As between the parties no court would question this right, or refuse to enforce the conditions. The interests of the general public are not prejudiced by any such transaction between debtor and creditor. In deed, they are rather promoted by any arrangement under which the mortgagor can continue in business, for in 99 cases out of a hundred the taking of possession by a creditor results in closing the business, and turning the debtor out of employment. The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations. Existing creditors may, of course, challenge the good faith of the transaction, but if they cannot disturb an absolute sale when made in good faith, why should they be permitted to challenge a conditional sale if made in like good faith? The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent. So, if the question were open, or a new one, unaffected by any settled law of the state, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith."

We are to inquire, therefore, whether the question here presented has been directly or in effect determined by the Supreme Court of Oregon. That court has distinctly held that where a mortgagee has given the mortgagor unlimited power to dispose of the mortgaged property for his own use, the mortgage is void as to the creditors of the mortgagor, even though there was no actual fraudulent intent on the part of either of the parties to the mortgage. Orton v. Orton, 7 Or. 478, 33 Am. Rep. 717; Jacobs Bros. & Co. v. Ervin, Assignee, et al., 9 Or. 52.

So, also, has it been adjudged by that court that where such power of disposition by the mortgagor is limited to a part only of the mortgaged property the mortgage is void in toto if executed with an actual and positive fraudulent intent on the part of the mortgagor, knowingly acquiesced in by the mortgagee. Greig v. Mueller et al., 66 Or. 27, 133 Pac. 94, 46 L. R. A. (N. S.) 722, decided June 10, 1913. In the present case, however, it is expressly agreed that no actual fraud entered into the transaction in question.

The only decision of the Supreme Court of Oregon relied upon by the respondent and appellee as having determined the question here involved is that of Bremer & Co. v. Fleckenstein & Mayer, 9 Or. 266.

The facts of that case are, in substance, that one Haas mortgaged to Fleckenstein & Mayer a stock of wines, liquors, and cigars, and certain barroom fixtures. Haas being at the time indebted to Bremer & Co., the latter shortly after the mortgage was executed sued Haas and attached the mortgaged property, in which action Bremer & Co. recovered judgment for $289, with interest and costs taxed at $24.20. Fleckenstein & Mayer brought suit to foreclose their mortgage, in which suit the mortgaged property was sold under execution for $1,-240, $200 of which was the proceeds of the wines, liquors, and cigars included in the mortgage, and the remainder the proceeds of the mortgaged fixtures and furniture. All of this money was paid into the hands of Fleckenstein & Mayer, against whom Bremer & Co., not having been made a party to the foreclosure proceedings, brought suit to recover the $289, with interest and costs, due from Haas, and obtained a decree against Fleckenstein & Mayer for $200 and the costs of the suit, which decree was affirmed by the Supreme Court of Oregon, the court saying:

"Haas was allowed to continue in possession of the mortgaged property, and keep his place of business open as usual, from the date of the execution of the chattel mortgage on June 2, 1879, until it was attached by respondents on July 7, 1879, with the full knowledge and consent of the appellants [which] is not denied. That the mortgage covered all his stock in trade, and that he continued to sell it off at retail during said period, with the knowledge and consent of the appellants, is not disputed. That he sold on credit as well as for cash during this period fully appears from the testimony. That he replenished his stock from time to time during this period, with the proceeds of such sales, and even patronized the appellants while so doing, is clearly proven. Haas testifies that Mayer, one of the appellants, told him not to sell at wholesale, but at retail only, at the time the mortgage was executed. Mayer himself was a witness, and did not dispute this. On the contrary, he seems to concede that Haas was to sell at retail, but claims he was only to sell for cash, and not to sell at wholesale. His testimony also fairly justifies the inference that Haas was to use such portion of the proceeds of sales made after the execution of the mortgage as might be necessary to meet his own personal expenses incurred in conducting the business, and keep his stock replenished. And this was just what he evidently did with the amounts received by him on account of sales of the mortgaged stock. Here, then, we find Haas, after the execution of the mortgage to appellants, carrying on his business in the same manner as before, selling off the mortgaged stock in trade, and paying his own expenses, and keeping up his stock by fresh purchases out of the proceeds of such sales, rendering no account to the holders of the mortgage, and in reality under no more restraint than if it had not been in existence. And yet its obvious effect was to ward off his other creditors, and hinder and delay the collection of their demands against him, and the appellants must be presumed to have so intended. We have no hesitation in declaring that such an arrangement was a fraud upon the other creditors, and cannot be upheld."

It is evident from the foregoing opinion that the trial court had held the mortgage void as to the wines, liquors, and cigars, but not as to the fixtures, for it only gave the complainant judgment for $200—the amount realized from the sale of the wines, liquors, and cigars—and Bremer & Co. not having appealed, the only question presented to the Supreme Court was whether the mortgage was void to the extent it was so declared by the court below. It is manifest, therefore, that the question now before us was not decided in the case of Bremer & Co.

v. Fleckenstein & Mayer, nor has it been determined in any other decision of the Supreme Court of Oregon that has been cited, or that we have been able to find.

We, therefore, think the case in hand should be disposed of in accordance with the views of the Supreme Court of the United States as expressed in Etheridge v. Sperry, supra, and which we think accords with the substantial justice of the case.

It results that the judgment must be, and hereby is; reversed, and the cause remanded to the court below for further proceedings in accordance with the views indicated.