## SCANDINAVIAN–AMERICAN BANK v. SABIN.

### In re SONDHEIM.

(Circuit Court of Appeals, Ninth Circuit. October 25, 1915.)

### No. 2615.

1. BANKRUPTCY ⟐440—APPELLATE PROCEEDINGS—MODE OF REVIEW.

A controversy between a trustee and an adverse claimant of property, who was in possession at the time of the bankruptcy, but pursuant to stipulation turned it over to the trustee for sale, is one arising in a bankruptcy proceeding, and reviewable by appeal, under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (Comp. St. 1913, § 9608).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⟐440.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY ⟐188—PROPERTY PASSING TO TRUSTEE—VALIDITY OF LIEN.

Under Bankr. Act 1898, § 47a (2), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), vesting a trustee, as to all property in the custody of the court, with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, an agreement under which a creditor claims property, which might be good as against the bankrupt, may not be as against his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. ⟐188.]

3. CHATTEL MORTGAGES ⟐9—FORM OF INSTRUMENT.

An agreement under which a bank advanced to bankrupt the money to buy a stock of goods, and which provided that he should take title as trustee for the bank in so far as necessary to protect the bank and pay back the money he owed to it, held in effect a chattel mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 14, 15; Dec. Dig. ⟐9.]

4. COURTS ⟐366—FEDERAL COURTS—STATE LAW AS RULE OF DECISION.

In determining the validity of chattel mortgages in bankruptcy proceedings, a federal court will follow the settled law of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⟐366.

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

5. BANKRUPTCY ⟐184—CHATTEL MORTGAGE—VALIDITY.

Under the law of Oregon as settled by decision, when it appears either from the face of the mortgage or by parol evidence aliunde that a mortgagee of personal property has given the mortgagor unlimited power and authority to dispose of the property in the usual course of trade, without accounting therefor, the mortgage is void as to attaching creditors, even though there was no actual fraudulent intent, and it is equally void as to the trustee in bankruptcy of the mortgagor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. ⟐184.]

Petition for Revision of, and Appeal from, an Order of the District Court of the United States for the District of Oregon, in Bankruptcy; Robert S. Bean, Judge.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of D. Sondheim, bankrupt, with R. L. Sabin, as trustee. Petition to revise and appeal by Scandinavian-American Bank from an order denying its claim to a lien. Affirmed.

This is a controversy between R. L. Sabin, trustee in bankruptcy of the estate of D. Sondheim, bankrupt, and the Scandinavian-American Bank, a corporation, respecting the ownership of a certain stock of goods and merchandise. The material facts are not in dispute. On or about the 22d day of October, 1914, Sondheim, who was engaged in the business of buying and selling bankrupt stocks of merchandise, was in debt to the bank in the sum of about $2,600, represented by three promissory notes. Being desirous of purchasing a certain bankrupt stock of merchandise, he on the date above mentioned applied to the bank for an additional loan of $2,600. The loan was made by the bank, whereupon Sondheim gave to the bank his note for the amount, and at the same time entered into an agreement with it, the material recitals of which are as follows:

"Whereas, the Scandinavian-American Bank has furnished to D. Sondheim, the sum of $2,600, to be used to purchase the goods, wares, and merchandise of the store located at 146 Sixth street, Portland, Oregon, under an agreement to protect the said party of the second part [the bank], absolutely on said purchase: Now, therefore, said agreement is hereby reduced to writing and executed between the parties of the first and second part in the following manner and form, to wit:

"It is understood and agreed between the parties hereto that the goods, wares, and merchandise heretofore named were purchased with the money furnished by the party of the second part, and that said D. Sondheim holds title in the same as trustee for the said party of the second part, in so far as the holding of said title is necessary to protect and pay back to the party of the second part the sums of money owing by the party of the first part to the party of the second part.

"It is understood and agreed that the party of the first part shall proceed to sell the goods, wares, and merchandise in the regular course of business, and shall keep an account of each day's sales, and one-half of the moneys taken in for the sale of said goods at the close of each day shall be turned over to the party of the second part at the opening of its banking hours the following day, until such time as the $2,600 advanced by the party of the second part, and any other indebtedness to the extent of $2,600 owing by the party of the first part to the party of the second part shall have been fully paid and satisfied.

"It is further understood that the party of the second part shall have the right to install a cashier, whose wages shall be paid as part of the running expenses of the business by the party of the first part, to keep track of the receipts and disbursements from the sale of said merchandise, and to be cashier in charge of all moneys handled during said sale; said party to have access to all books, records, bills, and invoices in connection with the said business heretofore referred to, and the sale and disposal of the same.

"It is further stipulated that no sale of the bulk of said articles, goods, wares, and merchandise first above named, shall be made without the consent of the party of the second part."

The agreement was never recorded. Sondheim thereupon purchased the stock of goods and merchandise, opened a store, and proceeded to sell the same, and continued to sell the same up to and including about the 13th day of November, 1914.

Both the referee and the court below found, and, indeed, it is not disputed, that during this period Sondheim was in possession of the stock of merchandise as sole and exclusive owner; that no account of sales was rendered by him to the bank; that the proceeds from sales were deposited by him in the bank to his own credit in the ordinary course of business, and commingled with funds received from other sources; that the account was at all times subject to his check; and that he was permitted to and did make large additional purchases of merchandise, claims for which are included in the bankruptcy proceedings in the court below; that the clause in the agreement to

the effect that Sondheim should keep an accurate account of each day's sales, and should turn over to the bank one-half of the moneys taken in for the sale of the goods at the close of each day, and also the clause respecting a cashier to be installed by the bank to keep track of receipts and disbursements, were, by consent of the parties, disregarded and not enforced.

On November 13, 1914, actions were brought by certain creditors of Sondheim, and writs of attachment were issued thereunder. On the same date the bank, learning of the attachments, and before the same could be levied upon the stock of merchandise in controversy, entered Sondheim's store and took possession of the merchandise, and placed in charge thereof one of its representatives. Three days later involuntary proceedings in bankruptcy were instituted in the court below, and a receiver was appointed to take charge of the assets of the estate. Subsequently the receiver filed a petition in the bankruptcy proceedings, claiming that the merchandise in question was an asset of the estate, and asking for an order directing the bank to deliver the stock to him forthwith, and to account to him for the proceeds of such part thereof as had been sold by the bank. By stipulation of the parties, approved by the court, the goods were delivered to the receiver and by him sold, and the proceeds deposited with the bank to await the action of the court in the present proceeding. Such proceedings were thereupon had in the court below that on the 21st day of May, 1915, the court made and entered its decree directing the payment of the moneys representing the proceeds of the sale of the stock to the trustee, who had succeeded the receiver, for the benefit of the creditors of the bankrupt estate. From the decree the bank has prosecuted an appeal, and also seeks to have it reviewed by this court by petition to revise under section 24b of the Bankruptcy Act.

Sidney J. Graham, of Portland, Or., for petitioner and appellant.

Sidney Teiser and Roscoe C. Nelson, both of Portland, Or., for respondent and appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. We are of opinion that the question at issue presents a controversy arising in the course of bankruptcy proceedings, and is appealable under section 24a of the Bankruptcy Act (Act July 1, 1898, 30 Stat. 553). Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; In re First National Bank, 135 Fed. 62, 67 C. C. A. 536; In re Mueller, 135 Fed. 711, 68 C. C. A. 349. The petition for revision will therefore be dismissed.

[2] 2. To the contention of the appellant that the trustee is without authority to maintain the proceeding, for the reason that no creditor had secured a lien upon the goods at the time the bank took possession of them, and hence the trustee secured no greater rights than the bankrupt himself had, it is only necessary to state that section 8 of the act of June 25, 1910, amending section 47 of clause 2 of the act of 1898 (36 Stat. 840), provides that the trustee, "as to all property in the custody * * * of the bankruptcy court, shall be deemed vested with all rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." Under this provision of the statute the trustee is not limited to such objections to a transaction between the bankrupt and a creditor as the bankrupt might have had, but he may make any objection that a creditor holding a lien might make. An agreement, therefore, which prior to this amendment would have been valid between the parties, may not be valid as against the trustee. Meier & Frank Co. v. Sabin, 214 Fed. 231, 233, 130 C. C. A. 605.

[3] 3. Passing to the merits of the case, it is obvious that the determination of the issues involved depends upon the construction to be placed upon the instrument of October 23, 1914, executed by Sondheim and the bank, and its validity as against the creditors of the bankrupt estate. The instrument on its face purports to be a trust agreement, vesting in the bankrupt title to the goods in suit as trustee for the bank "in so far as the holding of said property is necessary to protect and pay back to the party of the second part [the bank], the sums of money owing by the party of the first part to the party of the second part." And by the paragraph immediately following it sufficiently appears that the "sums of money owing by the party of the first part to the party of the second part" include not only the $2,600 borrowed for the purchase of the goods and merchandise in suit, but also the indebtedness of $2,-600 owing by Sondheim to the bank at the time of the execution of the document. But we are of opinion that, regardless of the phraseology employed, the instrument was intended to be and is a chattel mortgage. Indeed, as pointed out by the referee, it could be nothing else under the laws of Oregon; for it must be remembered that title to the goods was never in the bank. It vested directly and exclusively in Sondheim at the time of the purchase of the goods and merchandise by him. That being true, it is obvious that the instrument, as between the bank and Sondheim, cannot be construed as a conditional sale, as claimed by the bank. The construction of the instrument is not to be found in any name which the parties may have given to it, and not alone in any particular provisions it may contain. Herryford v. Davis, 102 U. S. 235, 244, 26 L. Ed. 160. But regardless of the classification, if the instrument were executed with intent to hinder, delay, or defraud creditors of Sondheim, or if subsequent to its execution, by the conduct and acts of the parties, it became in their hands an instrument calculated to hinder, delay, or defraud creditors, it is void as against such creditors.

[4, 5] In determining the validity of chattel mortgages in bankruptcy proceedings, the federal court will follow the settled law of the state in which the transaction occurred. In re First National Bank, 135 Fed. 62, 67 C. C. A. 536. The Supreme Court of Oregon has consistently held that when it appears either upon the face of the mortgage, or by parol evidence aliunde, that a mortgagee of personal property has given the mortgagor unlimited power and authority to dispose of the property in the usual course of trade, the mortgage is void as to attaching creditors, even though there was no actual fraudulent intent on the part of either of the parties to the instrument. Orton v. Orton, 7 Or. 478, 33 Am. Rep. 717; Jacobs v. Ervin, 9 Or. 52; Bremer v. Fleckenstein, 9 Or. 266; Aiken v. Pascall, 19 Or. 493, 24 Pac. 1039; Fisher v. Kelly, 30 Or. 1, 46 Pac. 146; Sabin v. Wilkin, 31 Or. 450, 48 Pac. 425, 37 L. R. A. 465; Greig v. Mueller, 66 Or. 27, 133 Pac. 94, 46 L. R. A. (N. S.) 722; Peterson v. Sabin, 214 Fed. 234, 130 C. C. A. 608. The only qualification placed upon this rule is that laid down in the case of Currie v. Bowman, 25 Or. 364, 35 Pac. 848. It was there held that chattel mortgages on goods, although permitting the mortgagor to remain in possession and sell the same in the ordinary course of trade, may be upheld, where the mortgagee is required to keep a strict account of sales,

and pay over the proceeds thereof to the mortgagor, and the conduct of the mortgagee indicates that he intends the terms of the mortgage to be observed.

In the present case, by express terms of the agreement, Sondheim was permitted to sell the goods in the regular course of business. There can be no doubt that the rule laid down is directly applicable. But the bank contends that the case falls within the qualification or exception stated in Currie v. Bowman, for the reason that the instrument provided for an accounting on the part of the bankrupt at the close of each day to the extent of one-half of the proceeds of the sales, and also provided for the installing of a cashier by the bank to keep track of the receipts and disbursements. But it is not denied that these terms and restrictions were abandoned by mutual consent. One payment only, of $500, was made by Sondheim to the bank on account of the indebtedness during the three weeks in which he was in control of the stock. There is testimony to the effect that by a verbal agreement with Sondheim the bank had the privilege of charging his account with one-half of the proceeds of sales on certain dates, and in the exercise of that privilege his account was charged by the bank with the sum of $365 on November 12th and $195 on November 13th. These were the only credits made on the indebtedness covering the period of three weeks. They cannot be said to have amounted to a "strict accounting," or, indeed, to any accounting, within the meaning of the term as used in the agreement, or as construed by the Supreme Court of Oregon in Currie v. Bowman, supra. The rule applicable to these facts is ably stated by Mr. Justice Wolverton, for the Supreme Court of Oregon, in the case of Sabin v. Wilkins, supra, as follows:

"The intent and purpose of the parties in giving and receiving a chattel mortgage is the test of its validity at its inception; but, as it is a thing capable of modification by subsequent agreement, either express or implied, by co-operative and willful disregard of its terms and conditions, it is a prerequisite to its continuing validity that good faith and fair dealing be maintained towards those whose interests may be affected by it. A chattel mortgage given primarily for the benefit of the mortgagor is void as against creditors from the beginning (Hill's Ann. Laws, § 3053); but, if given bona fide, and the parties, by their subsequent treatment of it and the property covered by it, convert it into an instrument calculated to effectuate the same purpose, it is none the less fraudulent and void from the time such purpose is promoted."

The rule is one calculated to promote fair dealing between a vendor of personal property and his creditors, or parties who are likely to become creditors. In the present case there was nothing whatsoever, of record or otherwise, to indicate to any one with whom Sondheim might be contracting debts that the goods and merchandise on display in his store were incumbered in any manner whatever. It appears from the record that Sondheim purchased merchandise on credit to the value of thousands of dollars, and it is but reasonable to suppose that to a great extent he was enabled to do this by reason of the fact that the parties from whom he purchased looked upon his stock of merchandise as an asset and a source of payment in the event of the failure of Sondheim to meet his obligations. Such, at least, was the inevitable tendency of

the situation, without regard to any actual fraudulent intent on the part of either the bank or Sondheim. It would indeed be a harsh rule which would permit the bank, under such circumstances, to retain and enjoy the fruits of a situation brought about by its own unjust and unfair acts and conduct, at the expense of the general creditors of the bankrupt.

The decree of the court below is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes