## IRI ORTON, RESPONDENT, *v.* M. W. ORTON, L. GOLD-SMITH & CO., APPELLANTS.

CHATTEL MORTGAGE—CONTROL OVER BY MORTGAGOR RENDERS VOID, IN WHAT CASE.—When it appears either on the face of a chattel mortgage or by parol evidence that the mortgagee of personal property has given to the mortgagor unlimited power to dispose of the property mortgaged for the use of the mortgagor, the mortgage is void as to purchasers and attaching creditors. In such case there is no lien as against innocent purchasers, and where there is no lien there is no mortgage.

APPEAL from Marion County.

This is a suit by the respondent, Iri Orton, to foreclose a chattel mortgage, executed by the defendant, M. W. Orton. The mortgage was executed and duly registered on the twenty-first day of September, 1878, to secure a promissory note of that date for two thousand one hundred and fifty-two dollars and interest, payable one day after date. The property mortgaged consisted of a stock of goods. The

mortgagor was permitted to remain in possession of the goods and dispose of them in the usual course of his business as a retail dealer. On the ninth of October, 1878, the appellants, L. Goldsmith & Co., brought suit by attachment against the mortgagor, M. W. Orton. The goods were levied upon under the attachment. On the twenty-fourth of the same month L. Goldsmith & Co. recovered a judgment in the attachment suit for three thousand eight hundred and eighty dollars. The appellants, Goldsmith & Co., filed a demurrer in the court below, which, having been overruled, is not insisted upon here. They allege want of consideration and fraud in the execution of the mortgage.

The court below decreed a foreclosure of the mortgage. From that decree this appeal is taken.

*H. H. Gilfrey and Tilman Ford,* for appellants:

When it appears from the mortgage itself or by evidence *dehors* the instrument, that the mortgagor shall retain possession, ·and sell and appropriate the proceeds to his own use, the mortgage is fraudulent in law, irrespective of the intention of the parties. (5 Ohio, 1; 52 N. H. 155; 1 Abb. Pr. 143; 51 Ill. 352; 1 Saw. 7; 3 Met. 515; 18 Ill. 403.)

A mortgage, with possession and power of disposition reserved to the mortgagor, is fraudulent, although placed on file in the clerk's office. (5 Ohio, 1; 3 Bank Reg. 75; 17 Wend. 492; 1 Saw. 7.)

A mortgage with possession and power of sale reserved to the mortgagor, is independent of the statute, fraudulent and void. (11 Wall. 392; 8 Nat. Bank Reg. 117; 1 Saw. 7.)

Goods sold by a mortgagor, who is left in possession with the power of sale by the mortgagee, can not be followed into the hands of innocent purchasers, and an execution purchaser has the same rights, and the goods can not be followed into his hands. (4 Comstock, 590; 17 Wend. 492.)

*Bonham and Ramsey,* for respondent:

Under the statute, if there had been no filings of the

mortgage, or change of possession of the chattels, there being a sufficient consideration, the validity of the mortgage would depend entirely upon the intent with which it was executed; and if it was made in good faith, and without any intent to defraud creditors, it must be held to be valid. (*Moore* v. *Floyd*, 4 Or. 101; 7 Bush, 29; 11 Met. 333; 2 Cush. 294; 2 Story, 646; 34 Md. 455; 121 Mass. 408; *People* v. *Bristol*, 35 Mich. 28; 42 Maine, 139; *Hughes* v. *Cory*, 20 Iowa, 399.)

In this case it is admitted that the mortgage was duly filed on the day of its execution, and filing being a substitute for delivery and a continued change of possession, there is no presumption whatever against the validity of the instrument. The presumption is that it is not fraudulent. (6 Or. 362.)

The cases cited by appellants differ from this case in this, that in them the mortgagors have unlimited power of disposal; while in this case the power to sell is limited, so that the mortgagor should not render the security insufficient. The question of fraud is one of fact and not of law. (4 Or. 101.)

By the Court, BOISE, J.:

So far as the overruling of the demurrer to the complaint is concerned, as the appellants have not insisted on it as a ground of error, we will consider it as waived by them. The mortgage is admitted to be sufficient in form and properly filed so as to give it validity, unless it was fraudulent in its inception, or rendered void by the subsequent acts of the parties to it. The testimony of both the mortgagor and mortgagee shows that the mortgage was executed to secure the payment of a note for the sum of two thousand one hundred and fifty-two dollars, which note was made in lieu of a former note for two thousand dollars, and interest, made February 2, 1878. The consideration of the two thousand dollar note was the sum of nine hundred dollars, loaned at that date by Iri Orton to his son, M. W. Orton, and his signing as surety for his son a note to Ried and Cox for one thousand one hundred dollars. If this testi-

mony of the Ortons is true, then we think there was a valuable consideration for the note and mortgage. Their testimony, though questioned by the appellants, is not contradicted in this regard. But conceding that the mortgage was valid in its inception, the other question and the main question in this case is, did the subsequent conduct of the parties to this mortgage render it void as to the attaching creditors, L. Goldsmith & Co.?

The evidence proves that after the execution of the first mortgage, Iri Orton permitted his son, M. W. Orton, the mortgagor, to continue to sell the mortgaged goods, which was a stock of merchandise, and apply the proceeds to his own use. And it seems from the evidence. that it was the intention of said Iri, at the time he took this mortgage, to permit his son to use the goods in the same manner as he had used them before the mortgage was given, and that this same understanding continued after the second mortgage (the one sued on) was given, and up to the time that the goods were attached by L. Goldsmith & Co. The respondent testifies that he knew the store was kept open and the goods were being sold by his son the same as before the mortgage was given, and when being examined as a witness he was asked this question: "It was your calculation that he (M. W. Orton) should just go along, and if everything went smooth, that he should sell goods and get other goods, and go ahead?" To which he answered: "Yes, sir; that was the idea." And again he was asked: "And you expected him to do that, didn't you?" Answer: "I didn't know when I might close him right out; I didn't know when. If he could have done well, I should not have closed him out." He was then asked what he meant by doing well; to which he answered: "If he could have sold a good deal of goods and got money to keep him from going under." It is true that the respondent claims that his son was not to so far diminish the stock of goods as to render it insufficient to the ample security of the note. But there was an unlimited right to dispose of the goods, and if the entire stock had been sold by M. W. Orton, prior to the commencement of this suit, the respondent could not, un-

der the state of facts developed in this case, have maintained replevin or trover against the purchasers for the goods so sold. That is, no lien attached to the goods that could have been enforced against the purchasers thereof in good faith. Where there is no lien there is no mortgage. For the lien which attaches to the property mortgaged is the very essence of the mortgage. We think that where it appears either on the face of the mortgage or by parol evidence that the mortgagee of personal property has given to the mortgagor an unlimited power to dispose of the property mortgaged, for the use of the mortgagor, that the mortgage is void as to purchasers and attaching creditors of the mortgagor.

It was claimed by the respondent's counsel in the argument, that this mortgage is aided by the statute of this state, section 766, p. 262, which provides that every sale of personal property capable of immediate delivery to the purchaser, and every assignment of such property by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession, creates a presumption of fraud as against the creditors of the seller or assignee, during his possession, disputable only by making it appear on the part of the person claiming under such sale or assignment, that the same was made in good faith for a sufficient consideration, and without intent to defraud creditors. But the presumption herein specified does not exist in the case of a mortgage duly filed or recorded as provided by law.

This statute does not in any way reach or provide for the case before the court. This mortgage is regular in form, and is recorded. The presumption raised by the statute which may be rebutted is as to mortgages that have not been recorded. But the statute is silent as to the effect of a provision in the mortgage, or an agreement between the mortgagor and mortgagee, that the mortgagor may sell the mortgaged property; and when this fact is made to appear, as in this case, then it becomes the question of law for the court to determine what shall be the legal effect

of such an agreement as affecting the creditors of the mortgagor.

This question has been the subject of much discussion in the courts, and there is some apparent diversity in the authorities. We think the weight of authority as well as reason is in favor of the rule before indicated, that where there is an unlimited power given to the mortgagor by the mortgagee to sell the mortgaged property which still remains in his possession, that the mortgage *is* void as against the attaching creditors of the mortgagor. In this case it was the manifest intention of Iri Orton to have M. W. Orton continue the business in his store, and sell the goods in the same manner as before the mortgage was given. This power to sell and continue the business as before, enabled M. W. Orton *to appear as the* unembarrassed owner of the goods, and enabled him to obtain credit which would have been denied him had the right to sell the goods been denied. As the power to sell was unlimited, there was no security retained in the goods to Iri Orton; for he abandoned his lien by his mortgage when he granted the power to his son to do with the goods the same as he had been doing. Such an agreement was utterly inconsistent with his claim under the mortgage, and annulled its provisions. The views we have taken harmonize with the English common law doctrine, and the rule as established in the federal courts, and many of the state courts. (1 Smith's Lead. Cas., 52, 7 Am. ed.; 22 Wall. 513; 16 Ohio, 547.) We think the decree of the circuit court should be reversed, and the respondent's bill dismissed.