Argued March 26, affirmed April 29, 1924.

# WIGGINS CO., INC., v. McMINNVILLE MOTOR CAR CO., L. R. VAN WINKLE AND F. B. FERGUSON, SHERIFF.

(225 Pac. 314.)

**Creditor's Suit—Creditor Held to have Capacity to Bring Suit to Set Aside Chattel Mortgage and Decree Foreclosing Same, and not Estopped to Do so.**

1. A creditor of a corporation could bring creditor's suit to set aside a chattel mortgage and a decree foreclosing the same, a judgment and insolvency being practically admitted, though having no lien by attachment, and it was not estopped to do so by reason of having had an attachment which it released.

**Chattel Mortgages—Chattel Mortgage upon Fluctuating Stock of Merchandise, When Void—Invalidity of Mortgage Held Waived.**

2. A chattel mortgage upon a fluctuating stock of merchandise is void as to creditors, where possession is not taken and where the mortgage purports to include in its terms after-acquired goods as well, but such a mortgage was not void as to creditors who were informed of the chattel mortgage before selling goods, and stated that they did not object thereto.

**Corporations—Chattel Mortgage Taken by President When Invalid as to Creditor.**

3. Chattel mortgage taken on goods of a corporation by its president who made advancements, at a time when the corporation was a going concern and not insolvent, was valid.

**Insolvency—Inability to Pay Debts upon Particular Day not "Insolvency."**

4. The mere fact that a corporation or an individual is unable to pay its debts upon a particular day does not constitute "insolvency."

From Yamhill: H. H. BELT, Judge.

Department 2.

This is a creditor's suit to set aside a chattel mortgage and a decree foreclosing the same, which chattel mortgage was executed by the McMinnville Motor

---

2.   Chattel mortgage on stock of merchandise as including additions thereto, see notes in **Ann. Cas.** 1916D, 1215, 1228; Ann. Cas. 1918E, 743.

Car Company on the seventeenth day of May, 1921, to secure the payment of the sum of $5,000 six months after the date of the mortgage and the note accompanying it. The mortgage becoming due and unpaid, a complaint was filed on November 28, 1921, and a decree was rendered on the fifteenth day of December, 1921, foreclosing the mortgage and directing the sale of the mortgaged property. The mortgaged property was advertised for sale under the decree for the twenty-ninth day of December, 1921, and on that day this suit was commenced by the plaintiff, on behalf of itself and all other unsecured creditors, to set aside the chattel mortgage and the decree secured by the defendant Van Winkle foreclosing the same, and to enjoin the defendants from proceeding further under such decree, and praying for the appointment of a receiver to take possession of the property of the McMinnville Motor Car Company, manage its affairs and dispose of its property, and for further and equitable relief.

The chattel mortgage upon which the decree in favor of Van Winkle is based is in the usual form and specifies, amongst other things, the following property, to wit:

"All of said corporation's rights and interest in and to the certain lease in the Wills Building and Garage on Fourth Street, in McMinnville, Oregon, and also all tools and machinery, parts of automobiles, fixtures, gas tanks, gas pumps, electric motor, and all equipment, and all stock in trade, accessories, parts, tires, contracts, book accounts of said corporation; and also

"a 1921 Special Studebaker Automobile, Serial No. 280505;
"a 1919 Nash Touring Car;
"a Buick Touring Car (2nd hand), Serial No. 3750;

> "a Studebaker Light Six Automobile, Serial No. 1011259;
> "a Special Studebaker Automobile, Serial No. 505114.

"All of said property being located in Wills Building and the garage of the mortgagor on Fourth Street, in McMinnville, Yamhill County, State of Oregon."

It also contains the following clauses:

"It is the intention of the mortgagor and hereby is agreed that this mortgage shall be a valid and subsisting lien on all other property, consisting of parts, fixtures, tires, stock in trade, automobiles, trucks, and cars of every description hereafter to be acquired in the course of trade and business of the corporation, and to further secure the mortgagee, the mortgagor places and turns over the possession of all of said property to the mortgagee.

"The mortgagor agrees that in case of the default of the payment of said sum of money or any part thereof, to pay in case of foreclosure thereof a reasonable sum as mortgagee's attorney's fees in such foreclosure.

"Now if the sums of money due hereon, including any future advances made, shall be paid according to the terms hereof then this instrument shall be void. But in case the mortgagor shall fail to pay the principal or the interest or any other advances when due, or shall suffer to be taken, seized or attached or levied upon or removed or sold without mortgagor's [sic] consent or violate any other of the provisions of this mortgage then the whole sum hereof shall become immediately due and collectible, and the mortgagee, his agents, attorneys or assigns, may foreclose the same by suit or by selling the same in the manner provided by law for the sale of personal property on execution, and the mortgagee, his agents or assigns, may enter any place or places where said property may be and seize and take the same and sell the same in said manner, and out of the proceeds of such sale retain all costs of such seizure and sale

and all costs and disbursements of any suit and his reasonable attorney's fees, and the full amount of the principal and interest, and all advances made, and the overplus, if any there be, pay over to the mortgagor."

The chattel mortgage was duly recorded on May 17, 1921.

The history of Van Winkle's connection with the McMinnville Motor Car Company, as we deduce it from the testimony and find the facts to be, and without stating minutely the contentions of the parties as to the facts, is about as follows: Prior to April 7, 1921, one Leinenweber, Peterson and Jacobsen owned all of the stock in the McMinnville Motor Car Company and the corporation before that time and up to April 7, 1921, was indebted to Van Winkle in the sum of $1,700, with some interest thereon. On the seventh day of April, 1921, Van Winkle bought out Leinenweber and Peterson's shares, paying therefor the sum of $4,200. The corporation at that time owed, including the $1,700 due Van Winkle, about the sum of $12,000 and had assets which were seemingly valued at $17,000. Van Winkle purchased Peterson's 32 shares and he and Jacobsen jointly purchased Leinenweber's 32 shares, each taking 16 shares. To raise the money to pay for Leinenweber's interest, and for other purposes, they borrowed $3,000 from the United States National Bank of McMinnville, giving the bank their individual notes. Of this amount $2,014 was paid to Leinenweber for his 32 shares and the balance, $986, was turned into the corporation and used by it. Van Winkle subsequently paid the $3,000 note executed by himself and Jacobsen and this money has never been repaid to him by Jacobsen. Jacobsen already had 32 shares in the corporation and, with the additional 16 shares

he had acquired from Leinenweber, owned 48 shares, which was one half of the stock of the corporation. Van Winkle had Peterson's 32 shares and the 16 shares derived from Leinenweber, giving him also 48 shares. One of these shares was transferred to his wife for the purpose of qualifying her to become a director. There can be little doubt that in holding this share she was really the shadow, or agent, of Van Winkle.

When the purchase was completed Leinenweber and Peterson stepped out of the corporation and Van Winkle was elected president and Jacobsen secretary and the business of the corporation proceeded under the management of these officials. Before the purchase of these shares a statement of the assets and liabilities of the company, prepared by Leinenweber, Peterson and Jacobsen, had been presented to Van Winkle, which turned out to be incorrect in that a note for $1,022, due from the corporation to some person, had not been listed among the liabilities. Thereupon Jacobsen brought an action against Leinenweber and Peterson for deceit and recovered from them, with damages, the sum of $648, being two thirds of the amount of the note. Subsequently, from time to time, Van Winkle loaned to the corporation various sums of money, aggregating in all $5,000, which makes up the amount specified in his mortgage. He was also an indorser or security on the company's notes for several thousand dollars, making the total amount due him on all accounts something over $8,000.

At the time Van Winkle bought into the corporation it owed the plaintiff, Wiggins Company, about $390, and the Goodrich Rubber Company about $1,100. Out of the money advanced by Van Winkle the Wig-

gins Company's bill was finally paid down to about $50, and the Goodrich Rubber Company's bill was reduced to about $131. A short time after Van Winkle's mortgage was made representatives of the Goodrich Rubber Company and the Wiggins Company were informed by Van Winkle that he had taken a mortgage on the corporation's property for $5,000, and they were asked if they were afraid to sell goods to the corporation with a mortgage on the property, to which they replied that they were not, and they again commenced selling goods to the corporation. All claims they now assert as creditors are for goods sold after July, 1921; the mortgage being dated May 17, 1921. It might be added, parenthetically, here that the claim of the Goodrich Rubber Company was assigned to the Wiggins Company for the purpose of collection, so that the Goodrich Rubber Company does not appear in this case except in so far as it is affected by being the assignor of this claim.

The corporation went along doing business as usual, paying its expenses and some of its back bills, until November, 1921, when, owing principally to financial conditions in the community, the garage business became very much depressed, and the corporation was not able to do business sufficient to enable it to keep up its credit. Up to that time, and particularly at the time of the execution of the mortgage, it was a going concern, with reasonable prospects of success. In November, 1921, the mortgage became due and, the company being unable to pay, Van Winkle commenced suit to foreclose and a few days thereafter this plaintiff commenced an action at law and caused the same property to be attached. Van Winkle claimed possession under his

mortgage and demanded of plaintiff and the sheriff that they should release it and, pursuant to his demand, the Wiggins Company released the attachment and the sheriff turned the property back to Van Winkle.

In December, 1921, as before stated, Van Winkle obtained a decree foreclosing the mortgage and the property was advertised for sale under such decree and a few hours before the time set for the sale plaintiff commenced this suit, without having any lien by attachment, judgment or otherwise, but later obtained a judgment and filed an amended complaint, setting up that fact, which complaint was not demurred to by the defendants.

Upon proper pleadings this case was tried out and on February 2, 1922, the court rendered a decree, finding for the defendants and dismissing the complaint; from which decree plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Vinton & Tooze* and *Mr. Lamar Tooze,* with an oral argument by *Mr. Walter L. Tooze, Jr.*

For respondents there was a brief and oral argument by *Mr. Frank Holmes.*

McBRIDE, C. J.—In this case we have not endeavored to state the testimony in detail, but have given our findings upon the general aspects of the testimony, reserving further detail to the opinion.

1. The first question arises as to the capacity of the plaintiff to bring this suit, but we think it fairly well settled, the amended complaint showing a judgment and the insolvency being practically admitted, that the plaintiff has sufficient standing to enable it

to bring a creditor's bill, although it has no lien by attachment. Nor do we think the fact that it released its attachment before judgment constitutes such an estoppel as would prevent it from bringing this suit.

2. The question seems to be pretty well settled in this state that a chattel mortgage upon a fluctuating stock of merchandise is void as to creditors where possession is not taken and where the mortgage professes to include in its terms after-acquired goods as well. The leading case on this subject in this state is the case of *Orton* v. *Orton*, 7 Or. 478 (33 Am. Rep. 717), in which case a son, being indebted to his father, executed a chattel mortgage upon a fluctuating stock of goods which was good in its conception, where no possession was taken and the father had permitted the son to go on with the business as he had before the execution of the mortgage, and whose testimony indicated that he had no intention of ever foreclosing it in case the son succeeded in carrying on the business successfully. It was held that the mortgage was void as to attaching creditors; the court saying:

" * * It is true that the respondent claims that his son was not to so far diminish the stock of goods as to render it insufficient to the ample security of the note. But there was an unlimited right to dispose of the goods, and if the entire stock had been sold by M. W. Orton, prior to the commencement of this suit, the respondent could not, under the state of facts developed in this case, have maintained replevin or trover against the purchasers for the goods so sold. That is, no lien attached to the goods that could have been enforced against the purchasers thereof in good faith. Where there is no lien there is no mortgage. For the lien which attaches to the property mortgaged is the very essence of the mortgage. * * " 7 Or. 481 (33 Am. Rep. 717).

" * * This power to sell and continue the business as before enabled M. W. Orton to appear as the unembarrassed owner of the goods, and enabled him to obtain credit which would have been denied him had the right to sell the goods been denied. As the power to sell was unlimited, there was no security retained in the goods to Iri Orton; for he abandoned his lien by his mortgage when he granted the power to his son to do with the goods the same as he had been doing. Such an agreement was utterly inconsistent with his claim under the mortgage, and annulled its provisions. * * " 7 Or. 483 (33 Am. Rep. 717).

The case of *Jacobs Bros. & Co.* v. *Ervin*, 9 Or. 52, involved an ordinary chattel mortgage. There were stipulations in it, however, that the mortgagors might remain in possession of the goods and in the free use and enjoyment of the same, subject to the mortgagee's right to take possession thereof and sell in default of payment or other breach of condition. The court held, first, that these conditions did not, of themselves, establish such an agreement as would render the mortgage fraudulent and void as to creditors; that the mere representation of possession would not render the mortgage void; but that where it was shown that, in addition to retaining the possession, there was a verbal agreement that the mortgagors should sell in the usual course of trade, such an agreement avoided the mortgage as to attaching creditors.

*Bremer & Co.* v. *Fleckenstein & Mayer*, 9 Or. 266, is to the same effect. In fact, this seems to be the unbroken trend of the decisions on this subject. In all of these cases the reason given by the court is the tendency that such arrangements have to give one a fictitious credit and to induce persons to deal with one as the owner of the property who would not

have so dealt had they been aware of the real condition of the property.

Here, however, we have a different case. The testimony of Van Winkle is clear that before purchasing the goods which were the subject of plaintiff's action at law he informed their representative of the existence of the chattel mortgage upon the goods and asked if the plaintiff company objected to selling to him on that account and the representative informed him that it did not, and actually allowed the defendant company to purchase the goods. So, as to these goods, plaintiff had actual knowledge of the existence of the mortgage upon them and if, in the face of that, plaintiff saw fit to sell the corporation other goods it should not now be heard to complain that it was deceived. It was not a question of constructive notice, which many of the courts seem to think insufficient, but it was a question of actual information sufficient to put the parties upon inquiry before dealing with the defendant company. Plaintiff and its representatives were informed that Van Winkle had a mortgage on the stock and their attention was therefore called directly to the fact that it was not unencumbered, and they had the means of ascertaining from the records to what extent it was encumbered. Under these circumstances the failure of Van Winkle to take possession of the property did not give the motor company a fictitious appearance of prosperity and solvency that it did not in fact possess. Under these circumstances we think that the plaintiff and its assignor dealt at their peril as to all transactions occurring after this knowledge was brought home to them.

So far as other creditors are concerned, they have not come in to assist in any way in this suit, and

if they have claims they have shown no disposition to assert them. The *American Cigar Co.* v. *Foster,* 36 Mich. 368, is a case in point. In that case, in an opinion rendered by that distinguished justice, CAMPBELL, it was said:

"The plaintiff sued Foster for the conversion of certain goods mortgaged to them by one Johnson on the 31st day of August, 1875. The mortgage covered expressly not only all goods then in store, but all other goods to be thereafter put there. The goods in question were not put there until the 4th of October, 1875. The mortgage was filed November 4th, 1875. Foster bought the goods on the 6th of November, in good faith, but with actual knowledge of the mortgage. The court below held that he held them free of the mortgage.

"We need not inquire whether this would have been so if he had no such actual knowledge. As between the mortgagees and Johnson there can be no doubt the goods were bound, and the latter could not refuse to deliver them up. We know of no principle which puts a purchaser with notice on any better footing than his vendor. Foster was therefore guilty of the conversion charged against him.

"The finding of facts shows the value of the property to have been one hundred and ninety-four dollars. The judgment below must be reversed, and judgment entered against Foster for that sum, with interest from February 17, 1877, the date of the finding, and costs of both courts."

A case similar in principle is that of *Wood* v. *Lester,* 29 Barb. (N. Y.) 145. See, also, *Tedford* v. *Wilson,* 3 Head (Tenn.), 311; *Pope* v. *Foster,* 7 Baxt. (Tenn.) 98.

The courts are practically unanimous in holding that, as between the parties, a chattel mortgage, properly registered and for a valuable consideration, creates a lien which can be enforced as between the parties; and, if between the parties, it would follow,

logically, that it might also be enforced as against the claims of creditors having actual notice at the time they gave the credit, and that seems to be the case here. This view in nowise conflicts with any former decision of this court. It was not without consideration that this court, in *Kenney* v. *Hurlburt,* 88 Or. 688, 702 (172 Pac. 490, 494, 173 Pac. 158, Ann. Cas. 1918E, 737, L. R. A. 1918E, 652), said that, "It is apparent that the modern trend of judicial decision is to uphold chattel mortgages upon a commercial stock of goods taken in good faith where the instrument is placed upon the public records." The quotation cited in that case from the opinion of Mr. Justice Brewer in *Etheridge* v. *Sperry,* 139 U. S. 266 (35 L. Ed. 171, 11 Sup. Ct. Rep. 565, see, also, Rose's U. S. Notes), is well worthy of consideration.

Under all the circumstances we are disposed to hold that these parties had notice of the existence of the mortgage and, having dealt with the parties with such knowledge, are in no position now to urge that the mortgage is void as to them, but that they stand in the same position as the parties themselves.

3, 4. As to the second proposition, that Van Winkle, at the time of the foreclosure being president of the company, occupied such a trust relation to creditors that he could not so far prefer himself as to take a chattel mortgage to secure his debts, we think that if the conditions had been such as counsel assumed, the proposition would be correct law. Where the corporation is insolvent, in the general sense of that word, that is, hopelessly unable to pay its debts in the usual course of business, there is no question that an officer of the corporation has no authority to prefer himself at the expense of other creditors. But such is not this case. When Van Winkle took this

mortgage the corporation was a going concern. It was not at that time insolvent. It had assets that by proper conservation appeared at that time sufficient to enable it to carry on its business and to pay its creditors. The mere fact that a corporation or an individual is unable to pay its debts upon a particular day does not constitute insolvency. If this were true there is probably not a bank nor any large business interest solvent, in the sense that it would be able to pay its debts if they were all demanded on the same day, or in the same week, or the same month. It is true that the business went to pieces later. It is also true that Van Winkle had confidence in the ultimate solvency and success of the corporation, or he would not have extended several months' credit and thereafter have indorsed other notes to the corporation. It was within his power, having a majority on the board of directors, to have taken a note for his claim and have closed up the business of the corporation on short notice. That he did not do so indicates his confidence in its ultimate solvency and its ability to weather any depression that might occur later.

Notwithstanding Jacobsen's testimony, which exhibits a great deal of ignorance of the condition of the corporation, coupled perhaps with a desire to welsh out of an honest debt that he incurred in the purchase of Leinenweber's shares, we are satisfied in our own minds that it was agreed, when this mortgage was given, that Van Winkle was to have possession of the property. And while the testimony does not indicate such a relation as might of itself be notice to creditors thereafter dealing with the corporation, we have no doubt that Van Winkle in good faith believed that he had such possession and that he exercised such supervision over the prop-

erty as was not only best for the corporation, but for himself and its creditors, if it had any outside of these two firms, who, as before stated, were informed of the condition of affairs.

We are satisfied from the testimony that Van Winkle has, put every dollar which this mortgage represents in the treasury of the corporation. The fact that, instead of applying the proceeds received from time to time to his own debt, he applied such proceeds, together with the money loaned by him to the corporation, to the payment of its back debts as far as these proceeds would go, instead of being taken against him as evidence that he is trying to defraud somebody, should rather be set down to his credit than otherwise.

This view of the case renders it unnecessary to consider the other matters so ably argued by counsel. This has not been an easy case to follow and lack of time and space forbid a further discussion or elaboration of the points raised in the brief of counsel for plaintiff. This brief has really exhausted the law upon the subject and has saved the court much labor that otherwise would have been employed in searching for the authorities.

Taking the case as a whole, we are of the opinion that the decision arrived at by the Circuit Court is sound, and the decree will therefore be affirmed.

AFFIRMED.

BEAN, BROWN and McCOURT, JJ., concur.