Argued March 26; modified September 9; rehearing denied
November 12, 1930

RUTH *v.* COX ET AL.

(291 P. 371)

*A. C. Fulton* of Astoria (G. C. & A. C. Fulton of Astoria on the brief) for appellant.

*Edward E. Gray* of Astoria for respondents.

BROWN, J. As to the chattel mortgage herein involved, the trial court adjudged and decreed:

"That that certain chattel mortgage in the complaint and in the answer and cross-complaint of the defendant John Larsson mentioned and described and by the defendant Larsson sought to be foreclosed in his cross-complaint, executed by the defendant Edward E. Cox, as mortgagor, to and in favor of defendant John Larsson, as mortgagee, and bearing date August 4, 1924, and, on that date, duly recorded at page 125, in volume 10, Records of Chattel Mortgages, in the office of the county clerk of Clatsop county, Oregon, wherein and whereby the defendant Edward E. Cox duly mortgaged unto the defendant John Larsson all of his certain herd of milch cows on his dairy ranch, in said mortgage described as the farm of the defendant Cox, in Clatsop county, Oregon, comprising 40 head of milch cows, 10 head of young cattle and 2 horses then being on such farm, to secure the payment to defendant Larsson by defendant Cox of a promissory note of even date with such chattel mortgage, executed by defendant Edward E. Cox, as Edward Cox, to and in favor of the defendant John Larsson in the sum of $2,058, bearing interest at the rate of 6 per cent per annum from such date until paid, accordingly as described in the answer and cross-complaint of defendant Larsson, was executed and delivered for the consideration in said note expressed, and without intent to hinder, delay, or defraud any creditor of the defendant Cox, but that subsequent to the execution and delivery of the said promissory note and chattel mortgage, the mortgagor therein did dispose of a considerable portion of the milch cows covered by said chattel mortgage, and did substitute therefor certain other milch cattle, so that at the time of the commencement of this suit the cattle originally mortgaged were no longer included in

the herd, nor in the possession of either the mortgagor or the mortgagee, and that at said time it was, and now is, impossible to identify and distinguish the cattle originally mortgaged from those animals thereafter substituted for cattle originally mortgaged and intermingled with those originally mortgaged.''

The court found that the substitution was carried on by Cox pursuant to an oral agreement made between Larsson and himself at the time of the execution of the chattel mortgage or subsequent thereto, wherein and whereby it was understood and agreed between them that whenever any milch cow or cows in the dairy herd should become substantially valueless for dairy purposes, then Cox, the mortgagor, should sell or otherwise dispose of such animals and purchase and substitute therefor in the dairy herd other milch cows, thereby maintaining the herd at the number contained therein at the time the mortgage was executed; that, by reason of the fact that the mortgagor, in compliance with the oral agreement above set out, sold or disposed of cows that had become useless for dairy purposes and purchased and substituted other dairy cattle in lieu thereof in order to maintain the herd at the original number and quality thereof, the chattel mortgage was rendered void ''so far as the same applies to said dairy cattle,'' but that the invalidity of the mortgage did not extend to the two horses named therein for the reason that no substitution therefor was either authorized or made.

■ Larsson contends that any beneficial interest of Cox in the cattle can not be reached by a creditor's suit, for the reason that the greater portion of the amount due the plaintiff from Cox was for services performed subsequent to the date of the mortgage. This is not the law. By reason of her judgment and the return of

*nulla bona,* the plaintiff had a right to institute this suit for the purpose of reaching the property of the judgment debtor. See 15 C. J., § 62, "Creditors' Suits," where the editors say:

"Any beneficial interest of a debtor in real or personal property which can not be reached by regular process of law and is not expressly exempted by statute may be reached by a creditor's bill and subjected to the payment or satisfaction of the debt; and only such property may be so reached."

■■ Furthermore, it is well-established law in this jurisdiction that the filing of a creditor's bill and the service of process upon the defendant creates a lien in equity on the effects of the judgment debtor, and that the foundation for a creditor's bill is made when a judgment at law has been obtained, execution issued thereon and such execution returned *nulla bona. Miller v. Sherry,* 2 Wall. 237 (17 L. Ed. 827). To the same effect, see *Dawson v. Sims,* 14 Or. 561 (13 P. 506); *Leavengood v. McGee,* 50 Or. 233 (91 P. 453); *Ryckman v. Manerud,* 68 Or. 350 (136 P. 826, Ann. Cas. 115C 522). We take the following from 8 R. C. L., § 38, "Creditors' Bills":

"It is generally held that where no specific lien has been acquired upon the property before suit, the filing of a creditor's bill in equity to reach personal assets of the debtor, or, at least, the service of process upon the bill, will operate as a specific lien in the nature of an attachment or equitable levy upon the property sought to be charged, and will confer priority of right to payment out of the proceeds as against other creditors or purchasers *pendente lite.*"

The plaintiff relies upon the doctrine announced in *Wiggins Co., Inc., v. McMinnville Motor Car Co.,* 111 Or. 123 (225 P. 314). In that cause the court referred to the case of *Orton v. Orton,* 7 Or. 478 (33 Am. Rep.

717), as the leading case on the subject in this state. In the Orton case a son, being indebted to his father, executed a chattel mortgage on a fluctuating stock of goods which was good in its inception, but possession was not taken by the father and he had permitted the son to go on with the business as he had done before the execution of the mortgage; and the testimony of the father indicated that he had no intention of ever foreclosing the mortgage in case the son succeeded in carrying on the business successfully. In determining the issue, the court held that the mortgage, though good in its inception, was, by the subsequent conduct of the parties thereto in placing no limitation upon the right of the son to sell the goods and apply the proceeds to his own use, rendered void as to the attaching creditors.

It will be noted that in the case at bar the mortgagor did not have unlimited power to dispose of the mortgaged property. On the other hand, his power of disposal was for the benefit of the mortgagee only, and for the sole purpose of preserving the value of the property mortgaged. The agreement between the parties to the mortgage permitted the sale or disposal of cattle under the mortgage only for the purpose of maintaining the security at its original value. In other words, in the event that one of the milch cows of the herd of forty cattle should die, the security being thereby lessened by the value of that cow, the mortgagor was required to replace such cow by a suitable dairy cow; and, in the event that any one of them should become unprofitable as a dairy cow, he was required to substitute, in lieu thereof, a cow that was suitable for dairy purposes. From the description of the property mortgaged, we observe that many of the cows were

aged. The following excerpt therefrom illustrates the character and nature of the security offered by Cox to Larsson:

"One cow ten years old, named 'Happy.'

"One Guernsey cow eleven years old, named 'Estell.'

"One red and white cow eleven years old, named 'Goo Goo.'"

In the natural course of events, these cows could be expected to serve as profitable diary cows for a brief period only; and it was but fair to Larsson that the security should be kept good by substitution.

██ It is asserted by the plaintiff that the agreement for substitution is not valid, but that, on the contrary it voids the entire mortgage. In the judgment of the writer, the agreement for substitution is, in equity, valid as between the parties to the mortgage. This view is sustained by the principle that equity treats as done that which the parties intended should be done: Jones on Chattel Mortgages (5th Ed.) § 154. See *Howell v. Walker*, 111 Ark. 362 (164 S. W. 746). A mortgage securing future advances has many times been held to be valid: Jones on Chattel Mortgages (5th Ed.), §§ 94, 95. In the interesting case of *Howell v. Walker*, supra, among other questions involved was the validity of a chattel mortgage upon a band of mules, wherein the mortgagor agreed with the mortgagee that in the event that any of the mules proved defective, the mortgagor would substitute a good mule for each defective one. The supreme court of Arkansas held that the agreement for substitution was good as between the parties, and as to all other persons having notice of such an agreement.

■ It is now well established that a chattel mortgage, where possession of the mortgaged property is not delivered, is a creature of the statute, and such a mortgage being in derogation of the statute of frauds and the common law, the statute must be strictly construed and substantially complied with.

An illuminating case that has been much cited is *In re Assignment of Thompson,* 164 Iowa 20 (145 N. W. 76, Ann. Cas. 1916D, 1210). Quoting from the opinion of the court, we note the following:

"In this state, the doctrine has been adopted that, in cases of stocks of goods, a party may, by express terms, mortgage, and his mortgage may be made to cover, not only the stock then in existence, but additions and substitutions thereafter made in the ordinary course of business, and this is the doctrine in many of the states. But the intention to do so must be clearly expressed in the mortgage, so as to charge persons dealing with the stock with notice of that fact. We have not to deal with that question here, for no attempt was made to mortgage additions or substitutions.

"The only reference in the mortgage to anything other than the property then in existence and described in the mortgage is found in the word 'increase' thereof. The rule generally stated as to increase is that, while the increase itself intended to be mortgaged need not at the time have identity or separate entity, yet it must at least be the product or growth or increase of property which at the time has a corporal existence, and in which the mortgagor has a present interest, and which is covered by the mortgage. Supporting this doctrine see *Varnum v. State,* 78 Ala. 30; *Paden v. Bellinger,* 87 Ala. 575 (6 So. 351); *McCarty v. Blevins,* 5 Yerg. (Tenn.) 195 (26 Am. Dec. 262); *Minnesota Linseed Oil Co. v. Maginnis,* 32 Minn. 193 (20 N. W. 85); *Farmers' L. & T. Co. v. Long Beach Improvement Co.,* 27 Hun. (N. Y.) 89."

The chattel mortgage of record in the instant cause makes no pretense of covering either the increase or

any addition to the herd, or of providing for any substitution thereof.

In commenting upon the validity of the act of substituting other property in lieu of that described in the mortgage, Jones on Chattel Mortgages (5th Ed.), says, at section 71:

"There can be no substitution of other property in place of that described in the mortgage by agreement of the parties, so as to make the mortgage a lien upon the substituted property as against third persons having no actual notice of the agreement; though, as between the parties to such agreement, the mortgage may be a lien upon the substitute property. The registration of the mortgage is not constructive notice to third persons of a lien upon the substituted property, although the description used in the mortgage might apply as well to that property as to the property originally intended."

■■ However, the fact that it is attempted by the mortgagor and the mortgagee herein to embrace in their mortgage cattle which the mortgagor did not own at the time he executed the mortgage does not invalidate that mortgage as to the property which he owned at the time of its execution. See Jones on Chattel Mortgages (5th Ed.), § 70. It is the opinion of the writer that defendant Larsson is entitled to have the chattel mortgage foreclosed and the cattle offered as security for the payment of the promissory note levied upon and sold. There is testimony tending to show that these forty cattle have died or have been sold and that others have been substituted therefor, so that none of the cattle originally mortgaged are in the possession of the mortgagor, or, if any of such cattle do remain in his possession, that they have become so intermingled with the substitutes that their identity has been lost. As bearing upon this phase of the case, we direct attention

to the case of *Elwert v. Hansen,* 89 Or. 399 (173 P. 939), where it was held that the record of a chattel mortgage which is sufficient to enable third parties to identify property by inquiry constitutes constructive notice to subsequent claimants. See also *Marquam v. Sengfelder,* 24 Or. 2 (32 P. 676); *Sommer v. Island City Mercantile Co.,* 24 Or. 214 (33 P. 559); *Hyland v. Oregon Agricultural Co.,* 111 Or. 212 (225 P. 728), and *Bloech v. Hyland Homes Co. et al.,* 119 Or. 297 (247 P. 761). In the disposition of this cause, it should be borne in mind that the forty cows comprising the herd mortgaged by Cox were not range cattle, but were dairy cows; and it would seem that some person could be found who is able to identify the survivors of the herd. Cox himself saw these cattle daily, and is acquainted with the cows that he describes in his mortgage as "Happy," 10 years old, and "Bessie," 11 years old, and the other milch cows particularly described and named in the mortgage. He saw and cared for them daily, and knew them from their appearance. And, if the cows above named, or any of the forty cows described in the chattel mortgage, are in existence and are yet in the possession of the mortgagor, the mortgagee is entitled to a decree ordering all such cattle sold for the purpose of satisfying the obligation evidenced by the note and mortgage involved. On the other hand, Anna Ruth, plaintiff herein, is entitled to a decree directing the sale of all substitutes for, and additions to, the original dairy herd belonging to the mortgagor on the date of the execution of the mortgage.

Neither party shall recover costs in this court.

COSHOW, C. J., and BEAN and BELT, JJ., concur.