Argued at Pendleton May 7; modified June 18; rehearing denied
July 30, 1935

# CHAMBERS *v.* HOT LAKE SANATORIUM ET AL.
### (45 P. (2d) 1045)

*George Cochran,* of La Grande, and *A. S. Cooley,* of Pendleton (Cochran & Eberhard, of La Grande, on brief), for appellant.

*S. H. Burleigh,* of La Grande, and *A. A. Smith,* of Baker (Burleigh & Burleigh, of La Grande, and Heilner, Smith, Grant & Fuchs, of Baker, on brief), for Harry McKinlay, Trustee.

RAND, J. This is a suit to foreclose a mortgage given by the Hot Lake Sanatorium, a private corporation, to plaintiff on April 20, 1927, to secure a loan of

$60,000. The suit was instituted on October 3, 1933. On December 14, 1933, the company was adjudged a bankrupt and Harry McKinlay, who was appointed as trustee of the bankrupt's estate, was joined as a defendant in the suit. He answered, setting up that the mortgage was void as a fraudulent conveyance. At the end of the trial, a decree was entered which, although awarding a judgment to plaintiff for the amount claimed to be due under the mortgage, held that the mortgage was fraudulent and void and that the title to the mortgaged property had become vested in the trustee in bankruptcy freed from the mortgage lien. From this decree, plaintiff has appealed.

There were other defendants in the suit who had or claimed to have some interest in the mortgaged property, but their rights were not adjudicated and they have not appealed. The question, therefore, is wholly between the plaintiff and the trustee of the bankrupt's estate.

On April 20, 1927, when this mortgage was given, the Hot Lake Sanatorium, hereinafter referred to as the mortgagor, was and for many years prior thereto had been conducting a large hospital and bathing resort at Hot Lake, Oregon, on the line of the Oregon-Washington Railroad & Navigation Company, a few miles east of La Grande, and, in connection therewith, was operating a hotel, dining room, laundry and other lines of business incidental thereto, and had in its employ a number of physicians, surgeons, nurses and other employees. Dr. W. T. Phy was its president and manager and the owner of 51 per cent of its stock and he was anxious to borrow $70,000 for the corporation. He consulted his brother, D. F. Phy, commonly known as Frank Phy, a business man of La Grande, and they were unable to secure a loan in that amount for the corpora-

tion. The amount of the proposed loan was then reduced to $60,000 and this sum was raised and loaned to the mortgagor by Frank Phy and Ada B. Phy, his wife, who was conducting the Foley House in La Grande, Mrs. Cavin, her sister, and A. A. Chambers, her niece, the plaintiff herein, and the mortgage was taken in the name of the plaintiff, who for many years prior thereto had been and still is employed as librarian in Wenatchee, Washington.

As security for the repayment of the loan, the mortgage in question was given and the same was duly recorded and indexed both as a real estate and as a chattel mortgage on the day of its execution. In and by the terms of the mortgage, the property covered thereby was described as follows:

"The north-half (N½) of the south-west quarter (SW¼) of section five (5), township four (4) south, range thirty-nine (39) east of the Willamette Meridian, in Union County, State of Oregon, embracing all of lots four (4) and five (5) in said section, and all that portion of Tule Lake, as originally meandered by the U. S. survey thereof, lying south of the center line extending east and west through the center of said section five (5), lying and being in the north-half (N½) of the south-west quarter (SW¼) of said section five (5). Also, the north-west quarter (NW¼) of the south-east quarter (SE¼) of said section five (5), embracing all of lot six (6) in said section five (5), and all that portion of Tule Lake, as originally meandered by the U. S. Government survey, lying and being in said lot six (6), south of the center line extending east and west through the center of said section five (5). Also, all of lots seven (7) and eight (8) in said section five (5), and all of the south-west quarter (SW¼) of the south-east quarter (SE¼) and the south-east quarter (SE¼) of the south-west quarter (SW¼) of said section five (5), all in said township, range, county and state. Together, with the hot-water and cold springs of water upon any

of said lands, and all other water rights of any kind and nature. And also all buildings, barns, bath-houses, pumps, engines, fixtures, tools, appliances of every nature, purchased or owned by said Hot Lake Sanatorium; and all personal property of every nature and description, used or intended to be used in the operation of said sanatorium, as a hospital and resort, including all furniture and furnishings on said premises and necessary or intended for use in operating and conducting the Hot Lake Plant, or for any kind of use therein.''

In order to provide additional security for the payment of the mortgage debt as well as to fix the amount then owing thereon, two supplemental agreements were later entered into between the mortgagor and the mortgagee. These instruments were witnessed and acknowledged so as to entitle them to be recorded and were so recorded as real and chattel mortgages immediately following their execution.

The first agreement was so entered into on January 25, 1930, and fixed the amount then owing as $59,264.32, and provided that the mortgagor should assign to plantiff an insurance policy on the life of Dr. W. T. Phy, to be payable in case of his death to the mortgagee and be applied by her in reduction of the mortgage debt. Doctor Phy died on March 14, 1931, and plaintiff received under the policy and applied in the reduction of the mortgage debt the sum of $22,454.37.

The second and last writing was entered into on October 15, 1931, and fixed the amount then owing as $36,010 and provided that the original mortgage should continue to operate as a lien upon all the property mentioned therein and that, in addition thereto and as additional security for the payment thereof, the mortgagee should have a lien ''upon all other real and personal property, rights, franchises, and on all open accounts receivable now due, together with those here-

after to become due, also corp. bank deposits, easements, appurtenances, privileges, interest, livestock, poultry, notes secured by mortgages, all other notes, securities, policies of insurance now held and those received hereafter to become due, which are now owned by the Hot Lake Sanatorium or which it may hereafter acquire during the life of this instrument''.

After the death of Dr. W. T. Phy, his son, Dr. Mark Phy, succeeded to his father's ownership and control of the corporation and was not successful. The corporation paid nothing on the mortgage debt after the last supplemental agreement was entered into. It allowed the taxes to accumulate and failed to keep its property insured as provided in the mortgage. This condition of the corporate affairs continued until the adjudication in bankruptcy and at the time this suit was commenced there was due and owing to the plaintiff the said sum of $36,010, together with interest thereon at the rate of 8 per cent per annum from the date of the last supplemental agreement and the further sum of $1,484.10, which plaintiff advanced and paid to insure the mortgaged property from loss by fire. For these amounts plaintiff was given judgment in the decree but was denied a lien therefor.

■ In the trial of this cause, the parties and the trial court seem to have assumed that the three instruments above referred to should be considered the same as if all their various provisions had been combined in one writing and that if there was any infirmity in any of the provisions contained in any of the writings, it would result in invalidating the whole mortgage security. We think that these instruments should not have been treated in that manner and that, if they had been considered separately as ought to have been done, a different decree would have been entered in the case. It

will be noted that each instrument deals with property not dealt with in the others and that the only thing in common between them is the debt which they purport to secure. Treated separately, it seems unreasonable to hold that an invalid provision in one should invalidate the entire transaction and render nugatory another instrument which does not contain such a provision and is only remotely connected therewith. Clearly this must be so unless the entire transaction was tainted with fraud.

■ There were but three objections raised to the original mortgage and, in our judgment, none of them possess any merit. The first relates to the payment of the consideration for which the mortgage was given. It appears that on the day of its execution only $56,580 was actually paid over to the mortgagor by the mortgagee. That that amount was actually paid on that day the defendant admits. The defendant also admits that within a few weeks thereafter the mortgagee paid to the mortgagor in bank securities an additional amount of $3,445, and contends that because of an overpayment of $25 these later payments must have been intended to be applied upon some other account. There is no evidence to support the contention and the matter is fully explained by Mrs. Phy in her testimony. It happened that the aggregate of the bank securities, consisting mostly of certificates of deposit, was the sum of $60,025. Both Dr. W. T. Phy, to whom the money was paid, and Frank Phy, by whom it was paid, are dead and can offer no explanation for this slight discrepancy between the face of the mortgage and the amount of the securities transferred. The circumstance relied upon is so trivial that, even if it could be assumed that Dr. W. T. Phy, who owned 51 per cent of the stock of the corporation, and had full control of its affairs,

would consent to the mortgaging of its property to the niece of his brother's wife in an amount in excess of the moneys actually loaned, the evidence in the case wholly disputes any fact upon which that assumption could be based.

■ The second objection urged is that, in describing the mortgaged property, the mortgage contains the words: "all personal property of every nature and description, used or intended to be used in the operation of said sanatorium, as a hospital and resort", and that this included large quantities of supplies that were necessarily used and consumed in the operation of the plant. But the supplies so consumed must necessarily have been replaced by other supplies of the same character which in turn became subject to the lien of the mortgage. That objection, therefore, possesses no merit.

■ The third objection is that the original mortgage, in general terms, included as a part of the mortgaged property certain Holstein dairy cows and a certain quantity of radium which were then on the mortgaged premises, and that, during the life of the mortgage, the mortgagee had consented to their being surrendered to others, and this, it is contended, amounted to fraud. The undisputed evidence, however, conclusively shows that, after the death of Dr. W. T. Phy, his son, Dr. Mark Phy, was appointed as administrator of his father's estate and that as such administrator he claimed that these Holstein cattle were the individual property of his father's estate, and this question was contested in court by the mortgagee and decided adversely to her contentions, and that possession thereof was given to the administrator in obedience to an order of the court. The same is true as to the mortgaged radium. That had been mortgaged to a third party and, against the con-

tentions of this mortgagee, possession thereof was involuntarily surrendered by plaintiff in obedience to an order of the court. Neither these facts nor circumstances, nor any other fact nor circumstance testified to in the case, show any actual or constructive fraud upon the part of the mortgagor or mortgagee in the giving of the original mortgage.

■ This is also true in respect to the good faith of the parties in carrying out the first supplemental agreement. The policy there mentioned was regularly assigned to the plaintiff as mortgagee and, upon payment thereof after the death of Dr. W. T. Phy, all the moneys received were applied in the reduction of the mortgage debt except $2,000 thereof which plaintiff consented should be paid over to the mortgagor to be applied in payment of other obligations which it then owed.

■ A different situation, however, exists as to the supplemental agreement last entered into between the mortgagor and the mortgagee. That instrument purported to mortgage "all open accounts receivable now due, together with those hereafter to become due, also corp. bank deposits * * * notes secured by mortgages, all other notes, securities, policies of insurance now held and those received hereafter to become due, which are now owned by the Hot Lake Sanatorium, or which it may hereafter acquire during the life of this instrument". None of the items thus mentioned were ever assigned or transferred to the plaintiff mortgagee. They were all left in the possession and under the control and dominion of the mortgagor who was given the power to collect the same and apply the proceeds thereof to its own use without being required to account for and pay over the same to the mortgagee.

It is well settled that a mortgage of property which reserves to the mortgagor the right to dispose of the same or to apply the proceeds thereof to his own use is as to creditors fraudulent in law and void. And this is true whether the reservation is contained in the mortgage itself or exists through some agreement of the parties outside of the mortgage. The same rule is applicable to a mortgage on a stock of goods where the mortgagor is given the power to dispose of the same in due course of trade and is not required to turn over the proceeds to the mortgagee for application on the loan or to apply the same in the acquisition of other goods which in turn are to become subject to the lien of the mortgage. Such a mortgage is held fraudulent in law and void as against creditors for the reason that the law presumes that the creditors have been misled by a false ostentation of ownership: *Orton v. Orton,* 7 Or. 478 (33 Am. Rep. 717); *Wiggins Co., Inc., v. McMinnville Motor Car Co.,* 111 Or. 123 (225 P. 314); *Ruth v. Cox,* 134 Or. 200 (291 P. 371); *First National Bank of Burns v. Frazier,* 143 Or. 662 (19 P. (2d) 1091, 22 P. (2d) 325); *Harris v. Schnitzer,* 146 Or. 391 (27 P. (2d) 1010); *Benedict v. Ratner,* 268 U. S. 353 (69 L. Ed. 991, 45 S. Ct. 566).

Under the application of these rules, it is obvious that the last supplemental agreement purporting to mortgage the after-acquired property of the mortgagor, its book accounts, promissory notes and other choses in action, and granting the power to the mortgagor to apply the proceeds thereof to its own use in the conduct of its business, was fraudulent in law and, therefore, void as to the creditors whose rights have since become vested in the trustee in bankruptcy. We, therefore, hold that the original mortgage is a valid and subsisting obligation to the extent of the amount due

thereon as to all the property mortgaged thereby, and that plaintiff's rights under the mortgage are superior to those of the trustee in bankruptcy and that plaintiff is entitled to have the same sold and the proceeds thereof applied so far as necessary in satisfaction of the mortgage debt and in the repayment of the amount expended by her in keeping the mortgaged property insured against loss by fire. Plaintiff is also entitled to retain the amount received and applied by her from the life insurance policy above referred to. In respect to all the other property of the corporation not covered by the original mortgage, plaintiff has no right, title or interest therein whatsoever, either by reason of the mortgage or otherwise and the whole title to the same is now vested in the trustee in bankruptcy.

From this it follows that the judgment of the lower court in favor of plaintiff and for attorney's fees and for the amount expended by her for the insurance of the property against loss by fire is hereby affirmed, but its holding that the lien of the mortgage does not exist in respect to the mortgaged property mentioned and described in the original mortgage is hereby reversed. In all other respects, the decree of the trial court is affirmed.

CAMPBELL, C. J., not sitting.